**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

STEVE M. COHEN,

Plaintiff,

v.

GROUP HEALTH INCORPORATED,

Defendant.

No. 1:22-mc-00200-PAE-KHP

**Underlying Litigation:**

*Plavin et al. v. Group Health Inc.*,
No. 3:17-cv-1462-RDM (M.D. Pa.)

**DEFENDANT GROUP HEALTH INCORPORATED'S MEMORANDUM OF LAW IN
OPPOSITION TO STEVE M. COHEN'S MOTION TO QUASH SUBPOENA**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 4

   I.   The Underlying Action and Plaintiffs' Reliance on the NYAG Investigation and AOD. ............................................................................................................ 4

   II.   Mr. Cohen's Independent Knowledge of the Underlying Facts and the NYAG's Investigation. .............................................................................................. 5

   III.   Mr. Cohen's Efforts to Recruit Plaintiffs for the Underlying Action. ................ 6

   IV.   GHI's Efforts to Avoid Serving a Subpoena on Mr. Cohen .............................. 7

LEGAL STANDARD ..................................................................................................... 9

   I.   Standard for Transferring a Motion to Quash .................................................... 9

   II.   Standard on Motion to Quash ......................................................................... 10

ARGUMENT ............................................................................................................. 11

   I.   This Court Should Transfer the Motion to the Middle District of Pennsylvania ............ 11

   II.   In the Alternative, GHI's Subpoena is Proper and Mr. Cohen's Motion Should Be Denied .......................................................................................................... 13

     A.   GHI Has a Substantial Need to Depose Mr. Cohen ...................................... 14

     B.   Mr. Cohen's Role as "Litigation Counsel" in the Underlying Action is Virtually Non-Existent ............................................................................................ 16

     C.   Mr. Cohen's Deposition Would Not Risk Disclosure of Privileged Information ........ 17

     D.   Discovery Taken to Date Weighs Against the Motion .................................. 19

CONCLUSION ........................................................................................................... 20

# **TABLE OF AUTHORITIES**

**CASES**

*Alberi v. Aerojet Rocketdyne, Inc.,*
    No. 22-MC-90 (JPO), 2022 WL 1321373 (S.D.N.Y. May 3, 2022) ......................................13

*Chord Assocs. LLC v. Protech 2003-D, LLC,*
    No. 07-5138 (JFB) (AKT), 2013 WL 12366876 (E.D.N.Y. Oct. 18, 2013)...........................18

*Clare v. Clare,* No. 4:18-CV-05045-SAB,
    2021 WL 6206978 (E.D. Wash. Nov. 16, 2021) ....................................................15

*Doe v. Town of Greenwich,*
    No. 18-cv-01322, 2019 WL 4267692 (D. Conn. Sept. 10, 2019)...........................................17

*Finkel v. Zizza & Assocs. Corp.,*
    No. 12-CV-4108 (JS) (ARL), 2021 WL 1375655 (E.D.N.Y. Apr. 12, 2021) ..................15–16

*Goldberg v. Dufour,*
    No. 2:17-cv-00061, 2020 WL 373206 (D. Vt. Jan. 23, 2020) ....................................10, 15, 17

*Green v. Cosby,*
    216 F. Supp. 3d 560 (E.D. Pa. 2016) .....................................................................12

*Honeywell Int'l Inc. v. Mazars USA LLP,*
    21 Misc. 870 (ER), 2022 WL 94881 (S.D.N.Y. Jan. 10, 2022)...........................................13

*Hoog v. PetroQuest, LLC,*
    338 F.R.D. 515 (S.D. Fla. 2021).............................................................................13

*In re Am. Broad. Companies, Inc.,*
    735 N.Y.S.2d 919 (N.Y. Sup. Ct. 2001) ........................................................18–19

*In re Grand Jury Subpoenas,*
    318 F.3d 379 (2d Cir. 2002).................................................................................18

*In re Subpoena Issued to Dennis Friedman,*
    350 F.3d 65 (2d Cir. 2003).............................................................................. *passim*

*Jennings v. Family Mgmt.,*
    201 F.R.D. 272 (D.D.C. 2001).................................................................................16

*Johnson v. City of New York,*
    No. 16 Civ. 6426 (KAM) (VMS), 2018 WL 6727329 (E.D.N.Y. Dec. 18, 2018) .................16

*Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP,*
    No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) .....................10

*Lynch v. City of N.Y.*,
   No. 16-CV-7355 (LAP), 2021 WL 5140728 (S.D.N.Y. Nov. 4, 2021)...................................18

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
   No. 12-mc-00275, 2013 WL 238176 (S.D.N.Y. Jan. 18, 2013) ...............................................18

*Murata Mfg. Co., Ltd. v. Bel Fuse Inc.*,
   No. M8-85 (JFK), 2007 WL 1174826 (S.D.N.Y. Apr. 20, 2007) ...........................................16

*Rekor Sys. Inc. v. Loughlin*,
   No. 19-cv-7677 (LJL), 2022 WL 671908 (S.D.N.Y. Mar. 7, 2022).........................................15

*Salazar v. Driver Provider Phoenix LLC*,
    No. CV-19-05760-PHX-SMB, 2022 WL 1747811 (D. Ariz. May 31, 2022) .......................15

*Teachers Ins. and Annuity Assoc. of Am. v. Munro*,
   1:21-mc-00829 (LAK), 2022 WL 794569 (S.D.N.Y. Jan. 21, 2022)....................................13

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
   164 F.R.D. 245 (D. Kan. 1995)..................................................................................10, 16

*United States v. Mejia*,
   655 F.3d 126 (2d Cir. 2011)................................................................................................18

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*,
   17-CV-6788-FPG-MJP, 2021 WL 630910 (W.D.N.Y. Feb. 18, 2021)..................................19

*Versatile Housewares & Gardening Sys. Inc. v. Thill Logistics Inc.*,
   No. 09 Civ 10182 (KMK) (PED) 2010 WL 11601216 (S.D.N.Y. Dec. 6 2010) .............10, 18

*Weber v. McCormick*,
   No. 3:06-CV-2009 (PCD), 2008 WL 11489045 (D. Conn. Mar. 3, 2008).............................19

**STATUTES**

N.Y. Civ. Rights L. § 79-h.....................................................................................................18

**RULES**

Fed. R. Civ. P. 45(f) ......................................................................................................9, 10, 11

Defendant Group Health Incorporated ("GHI"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to Plaintiff Steve M. Cohen's ("Cohen") Motion to Quash. GHI respectfully requests, pursuant to Federal Rule of Civil Procedure 45(f), that this Court transfer the motion to Judge Mariani in the United States District Court for the Middle District of Pennsylvania. In the alternative, it requests that the Court deny the motion in its entirety.

### PRELIMINARY STATEMENT

Discovery in the underlying action, *Plavin v. Group Health Incorporated*, Case No. 3:17-cv-01462-RDM (M.D. Pa.) (hereinafter, the "Underlying Action"), has revealed that Steve Cohen possesses highly relevant, discoverable information that is not protected by the attorney-client privilege, the work product doctrine, or any other privilege or immunity. GHI seeks that discovery to defend against the claims Plaintiffs have asserted. That Mr. Cohen is one of Plaintiffs' several attorneys of record provides no basis to quash GHI's subpoena.

GHI is a health insurance company, and the Underlying Action is a putative class action, originally filed in 2017, on behalf of all members enrolled between 2011 and 2015 in a health insurance plan offered by the City of New York (the "City") to City employees and retirees—the GHI Comprehensive Benefits Plan (the "GHI Plan"). Plaintiffs' central claim in the Underlying Action is that documents distributed to City employees and retirees allegedly conveyed misleading impressions about the rate of reimbursement that GHI Plan members would receive for out-of-network medical services, and that Plaintiffs were injured when they used out-of-network services and were required to pay more for those services than they had expected.

Plaintiffs filed the Underlying Action following an investigation by the New York Attorney General (the "NYAG") and a 2014 Assurance of Discontinuance (the "AOD") concerning the same documents at issue in the Underlying Action. Although GHI admitted no

wrongdoing in connection with the NYAG investigation, Plaintiffs have placed the investigation and AOD at issue in the Underlying Action, relying on them in the operative complaint to support their claims against GHI.  Plaintiffs also have taken document and deposition discovery on those topics.

Mr. Cohen claims to have played a central role in the NYAG's investigation, which began in 2013 when Mr. Cohen was a law student not yet admitted to practice law.  For example, in documents produced by Plaintiffs in the Underlying Action, Mr. Cohen claims that he

█████████████████████████████████████████████████████████████████████████

Moreover, in 2014, Mr. Cohen filed a *qui tam* lawsuit against GHI—not as an attorney but in his personal capacity as a Plaintiff-Relator—in which he claimed to have "personal knowledge" about the alleged "schemes" GHI used to "mislead" members.[1]  The allegations in the Underlying Action concerning reimbursement GHI provided for out-of-network claims parallel those in the *qui tam* case, which Mr. Cohen ultimately discontinued—with prejudice and under threat of sanctions—after GHI demonstrated that the *qui tam* claims were frivolous.  Mr. Cohen also admits that *he* "conceived the [Underlying Action]" and the facts show he did so before he represented any plaintiffs in the Underlying Action.

GHI seeks discovery from Mr. Cohen concerning the information he provided to, and communications he had with, the NYAG, including any information that undermines Plaintiffs' claims in the Underlying Action.  GHI also seeks discovery of Mr. Cohen's "personal knowledge" concerning the factual bases for Plaintiffs' claims in the Underlying Action.  This information is highly relevant to the claims and defenses in the Underlying Action, particularly given that Plaintiffs in the Underlying Action have apparently used the very information that Mr.

---

[1]   That case is captioned *The City of New York, ex rel. Steve Cohen et al. v. Group Health Incorporated, et al.*, Index No. 101160/2014 (N.Y. Sup. Ct. N.Y. Cty.) (the "*Qui Tam* Action").

Cohen provided to the NYAG as the basis for their putative class action that followed on the heels of the NYAG's investigation and the AOD.  The information is not privileged, as Mr. Cohen concedes in his motion.

Discovery in the Underlying Action also has shown that Mr. Cohen (i) solicited City retirees in an effort to recruit them to join as named plaintiffs in the Underlying Action that he conceived of, (ii) personally verified interrogatories identifying dozens of individuals with whom Plaintiffs' counsel discussed the Underlying Action, and (iii) is identified on a privilege log that Plaintiffs produced last week, in more than 200 entries, reflecting communications with individuals who are not parties to the Underlying Action.[2]  As the District Court in the Underlying Action already held in compelling Plaintiffs to respond to GHI's discovery requests, GHI is entitled to discover "purely factual information" that is not protected by any privilege.  If any non-parties, for example, told Mr. Cohen that they were not deceived by the documents that Plaintiffs in the Underlying Action claim to be misleading, or if any non-parties told Mr. Cohen that they believed they received fair reimbursement as GHI Plan members, such information would be highly relevant to GHI's defenses and would not be privileged.

There can be no serious dispute that the discovery GHI seeks from Mr. Cohen is relevant. None of the information is privileged, and indeed, Mr. Cohen concedes in his motion that he possesses non-privileged information sought by GHI.  To the extent Mr. Cohen believes that any deposition questions GHI asks are privileged, appropriate objections can be raised and addressed at that time.  But neither the fact that Mr. Cohen is a lawyer, nor the possibility that Mr. Cohen

---

[2]      GHI intends to challenge Plaintiffs' deficient log, including inadequate descriptions of all logged communications as either "seeking legal advice" or "reflecting and seeking legal advice," without identifying the subject of said legal advice; and improper claims of privilege (such as claiming privilege over communications that included an individual who testified under oath that he never was a client of Mr. Cohen and never sought legal advice from Mr. Cohen).  A copy of the plaintiffs' privilege log is attached as Exhibit 1 to the Declaration of Jared I. Kagan (Aug. 17, 2022) ("Kagan Decl."), filed herewith.

may object to certain questions, provides a basis to quash the subpoena and deprive GHI of relevant discovery.

Given that the Underlying Action has been ongoing since 2017, the numerous discovery rulings the District Court already has issued, and the issues involved on this motion, GHI respectfully requests that the Court transfer the motion to Judge Mariani in the United States District Court for the Middle District of Pennsylvania. In the alternative, in the event this Court retains the motion, it should be denied.

**FACTUAL BACKGROUND**

I.      **The Underlying Action and Plaintiffs' Reliance on the NYAG Investigation and AOD.**

The Underlying Action is a putative class action filed on behalf of individuals who were enrolled in the GHI Plan between 2011 and 2015. The operative complaint ("Compl.")[3] asserts claims for unjust enrichment, violations of New York General Business Law, and New York Insurance Law. It alleges that the plaintiffs were "injured as a result of GHO's [sic] deceptive acts and practices when they used out-of-network providers and were not provided the coverage represented by GHI" (Compl. ¶ 71); that GHI's allegedly "unlawful conduct was partially, and prospectively, addressed by an Assurance of Discontinuance entered into with the Attorney General of the State of New York . . . ." *Id.* ¶ 1; and relies heavily on the AOD and the NYAG's 2013-14 investigation.[4] For example, the complaint alleges that:

- "[T]he NYAG concluded, 'GHI's materials do not accurately set forth the potentially wide gap between the out-of-network reimbursement and out-of-network charges, and potentially substantial out-of-pocket amounts for which GHI Plan members will be responsible,' and it was deceptive for GHI to 'merely

---

[3]      The First Amended Complaint is attached as Exhibit 2 to the Kagan Declaration.

[4]      The 2014 Assurance of Discontinuance between the New York Attorney General and GHI is attached as Exhibit 3 to the Kagan Declaration.

suggest that it is only a possibility that members will be required to pay for out of network services.'" *Id.* ¶ 9.

- "On September 8, 2014, Attorney General Eric T. Schneiderman and GHI entered into an Assurance of Discontinuance relating to GHI's conduct" concerning "four practices" that form the bases for Plaintiffs' claims. *Id.* ¶ 42.

In pursuit of their theory, Plaintiffs have taken document and deposition discovery from GHI concerning the NYAG's investigation and the AOD. For example, Plaintiffs have requested "[a]ll documents relating to the NYAG's Investigation of out-of-network reimbursement practices for the GHI Plan, as described in the AOD." Kagan Decl. Ex. 4 at 10. Plaintiffs also took a Rule 30(b)(6) deposition of a GHI corporate representative concerning "[t]he 2014 [AOD] entered into by GHI including, but not limited to, the investigation by the New York Attorney General that led to the [AOD]" and "[c]ommunications with the New York Department of Financial Services or the New York Attorney General . . . regarding coverage under plans offered by GHI." Kagan Decl. Ex. 5 at 4.

## II. Mr. Cohen's Independent Knowledge of the Underlying Facts and the NYAG's Investigation.

Mr. Cohen concedes in his motion that ***"[p]rior to*** his involvement in the [Underlying Action]"—and before he was even admitted to the practice of law—he "provided information to the New York Attorney General about GHI's [alleged] misconduct, which led to [the AOD]." Memorandum of Law in Support of Motion to Quash (July 27, 2022) ("Cohen Br."), ECF No. 4, at 2 (emphasis added). Mr. Cohen also was a Plaintiff-Relator—*i.e.*, a party rather than counsel—in a *qui tam* case that he filed against GHI in 2014. *Id.* In that case, Mr. Cohen alleged, *inter alia*, that GHI "fraudulently describe[ed] the insurance benefits that [GHI] promised to pay members" under the GHI Plan and that, in order "to induce more City

employees and retirees to choose the [GHI Plan], GHI . . . fraudulently described the insurance offered to members under that plan." *Qui Tam* Compl. ¶¶ 3, 84.[5]

In a 2017 email produced by Plaintiffs in the Underlying Action, Mr. Cohen explained that ██████████████████████████████████████████████████ ██████ Kagan Decl. Ex. 7. He also stated that ████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████. *Id.* In the same email, Mr. Cohen claimed to have "████████████████████████████████████████ ████████████████████████████████" *Id.*[6] Despite all of his boasting, Mr. Cohen's *Qui Tam* Action was ultimately discontinued with prejudice.

## III. Mr. Cohen's Efforts to Recruit Plaintiffs for the Underlying Action.

Mr. Cohen concedes that he "conceived" the Underlying Action, *see* Declaration of Steve M. Cohen (July 27, 2022) ("Cohen Decl.") ¶ 4, ECF No. 3; Cohen Br. at 2, 4, and 11, but he did so before having a client to bring it. Discovery has revealed that Mr. Cohen vigorously attempted to recruit plaintiffs for the Underlying Action. For example, Mr. Cohen communicated for several years with Alan Berkowitz, a retired New York City police officer, who passed messages from Mr. Cohen along to email listservs of retired New York City Police officers. Kagan Decl. Ex. 9 at 30:25–31:14; 122:10–123:2; 136:4–17; 142:15–143:7; 147:13–148:16. Mr. Cohen also communicated with Michele Diesman-Mason, the owner of a Facebook group for New York City police retirees, who helped Mr. Cohen arrange Zoom meetings with

---

[5]    The *Qui Tam* Complaint is attached as Exhibit 6 to the Kagan Declaration.

[6]    Notably, Mr. Cohen was a third-year law student in the spring of 2013 when his so-called "investigation" began; he was not admitted to the New York State bar until October 2013. Kagan Decl. Ex. 8.

potential plaintiffs.  In response to interrogatories that requested the identities of the individuals with whom Plaintiffs' counsel in the Underlying Action discussed the lawsuit, Plaintiffs identified dozens of individuals, and Mr. Cohen personally verified the responses under penalty of perjury.[7]

As a result of Mr. Cohen's recruitment efforts, he received factual information about potential plaintiffs and their experience with the GHI Plan.  The District Court in the Underlying Action held that such factual information is not privileged, *see* Kagan Decl. Ex. 11 at 20, and Plaintiffs produced relevant documents in discovery reflecting that information.  For example:

-  *. See* Kagan Decl. Ex. 12.

-  Kagan Decl. Ex. 13.

- Although Plaintiffs in the Underlying Action allege that the "Catastrophic Coverage" under the GHI Plan "added literally nothing to the basic coverage," Compl. ¶ 10, ███████████████████████ Kagan Decl. Ex. 14.

## IV.    GHI's Efforts to Avoid Serving a Subpoena on Mr. Cohen

Plaintiffs produced the document discovery described in Section III, *supra*, on June 24, 2022.  On June 29, 2022, GHI contacted Mr. Cohen and Plaintiffs' counsel by email, in an effort to avoid having to serve a subpoena, to discuss the need to take discovery from Mr. Cohen. Cohen Decl. Ex. A.  GHI identified relevant topics and the reasons why the information is important and necessary to GHI's defenses.  Although Mr. Cohen argues in his motion that

---

[7]    These interrogatory responses are attached as Exhibit 10 to the Kagan Declaration.

Plaintiffs' counsel agreed to consider "a narrowed list of deposition topics," Cohen Br. at 4, what Plaintiffs' counsel actually requested was "a much more detailed list of proposed [deposition] topics" for their consideration. Cohen Decl. Ex. B (ECF No. 3-2) at 8 (email from Plaintiffs' counsel to GHI). In response, GHI identified the following topics for a deposition of Mr. Cohen:

1. Mr. Cohen's Communications with the NYAG's office, DFS or any other regulator, if any, concerning GHI, and any evidence or information provided by Mr. Cohen to the same.

2. Non-privileged documents produced in this litigation from, to or referencing Mr. Cohen.

3. Mr. Cohen's personal opinions or beliefs concerning GHI, if any.

4. The manner in which Mr. Cohen purportedly "uncovered the fraud" alleged in this litigation "while wearing [his] investigative journalist's hat" and what, precisely, Mr. Cohen learned or uncovered during that process.

5. Any evidence supporting or contradicting the purported fraud referenced in PLAVIN_000005431.

6. Mr. Cohen's relationship, if any, with Alan Berkowitz and Michele Diesman Mason, who was involved in setting up a zoom recruitment meeting.

7. Virtual or in-person meetings with potential plaintiffs for this litigation, including but not limited to the zoom conference with Texas retirees mentioned in documents produced in the Underlying Action and testified to by Plaintiffs.

8. Mr. Cohen's role as a Plaintiff-Relator in the case captioned The City of New York, ex rel. Steve Cohen et al. v. Group Health Incorporated, et al., Index No. 101160/2014 (N.Y. Sup. Ct. N.Y. Cty.), including the factual basis and evidence supporting the allegations raised in that litigation and any facts or evidence contradicting those allegations, and the reasons for withdrawing that suit.

9. Mr. Cohen's relationship, if any, with NYC police unions.

10. Mr. Cohen's awareness and/or relationship with the individuals identified by Plaintiffs in response to Interrogatory Nos. 10 and 11.

11. Purely factual information learned by or provided to Mr. Cohen by third-parties concerning GHI's out-of-network reimbursement policies, or the GHI Plan, including any evidence he received supporting or contradicting Plaintiffs' claims.

12. Non-privileged communications between Mr. Cohen and potential class members or named plaintiffs.

13. Mr. Cohen's role, if any, in the NYC Organization of Public Service Retirees, and the purpose and actions of the group.

14. Follow-up questions to any testimony that Mr. Cohen provides.

Cohen Decl. Ex. B (ECF No. 3-2) at 6–7.

Plaintiffs' counsel rejected the proposed topics and would agree to allow GHI to depose Mr. Cohen only about his communications with the NYAG. *See* Cohen Decl. Ex. B (ECF No. 3-2) at 4–5. Having reached an impasse, GHI issued a subpoena to Mr. Cohen on July 18, 2022, seeking his deposition along with a single document request for "[a]ll Documents and Communications between or among [Mr. Cohen], on the one hand, and the New York Attorney General's Office, on the other, Concerning (i) GHI, (ii) the GHI Plan, or (iii) the claims and allegations in this Lawsuit." Cohen Decl. Ex. B (ECF No. 3-2) at 14.

Mr. Cohen filed the Motion to Quash on July 27, 2022. On August 5, 2022, GHI asked Mr. Cohen to consent to transfer the motion to Judge Mariani in the Middle District of Pennsylvania pursuant to Fed. R. Civ. P. 45(f). Mr. Cohen refused. *See* Kagan Decl. Ex. 15.

## LEGAL STANDARD

### I. Standard for Transferring a Motion to Quash

Rule 45(f) provides that, when the court where compliance is required did not issue the subpoena (as is the case here), "it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." FED. R. CIV. P. 45(f). The 2013 advisory committee notes provide that "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas" and that "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to

arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." FED. R. CIV. P. 45(f) advisory committee's note to 2013 amendment.

## II.     Standard on Motion to Quash

"The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts [need not] be carried on in the dark." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) (citation omitted).

Notably, "the rules generally do not place any initial burden on" the party seeking discovery "to justify their deposition and discovery requests." *Versatile Housewares & Gardening Sys. Inc. v. Thill Logistics Inc.*, No. 09 Civ 10182 (KMK) (PED) 2010 WL 11601216, at *3 (S.D.N.Y. Dec. 6 2010) (quoting *Friedman*, 350 F.3d at 69). "Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008).

A deponent's status as an attorney "does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices." *Goldberg v. Dufour*, No. 2:17-cv-00061, 2020 WL 373206, at *5 (D. Vt. Jan. 23, 2020) (quoting *Friedman*, 350 F.3d at 72). If a party hires counsel that "played a role in the underlying facts" of the case, that party (and that counsel) should expect a deposition might be required. *Versatile Housewares*, 2010 WL 11601216, at *5 (citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 249 (D. Kan. 1995)).

The Second Circuit requires application of "a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72. The Second Circuit has identified four, non-exhaustive considerations: (i) the need to depose the lawyer; (ii) the lawyer's role in connection with the matter in which discovery is sought and in relation to the pending litigation; (iii) the risk of encountering privilege and work-product issues, and (iv) the extent of already-completed discovery. *Id.*

**ARGUMENT**

**I.      This Court Should Transfer the Motion to the Middle District of Pennsylvania**

This Court should transfer this motion to Judge Mariani in the United States District Court for the Middle District of Pennsylvania. Doing so will promote judicial economy while imposing no burden on Mr. Cohen. The Underlying Action has been proceeding in that Court since 2017 and Judge Mariani has previously ruled on numerous discovery motions in the Underlying Action, including motions concerning privilege issues and Plaintiffs' counsel's communications with non-parties. Kagan Decl. Exs. 11, 18. Additionally, fact discovery closed on August 8, and expert submissions on class certification issues are due in September. Given that the schedule may need to be extended to accommodate Mr. Cohen's deposition, these issues can be handled more efficiently if the motion is before the Middle District of Pennsylvania.

Rule 45's "prime concern [of] avoiding burdens on local nonparties subject to subpoena" is not present here. Mr. Cohen is differently situated from typical "local nonparties." He and his co-counsel filed the Underlying Action in the Middle District of Pennsylvania and Mr. Cohen is admitted *pro hac vice* to practice in the Middle District of Pennsylvania. As a result, transferring this motion would not impose any material burden on Mr. Cohen.

Where, as here, the burden on the non-party is minimal, and the Court overseeing the underlying action has expertise in the relevant discovery sought, courts routinely transfer motions to quash to the issuing court. For example, in *Drummond Co. v. VICE Media LLC*, Judge Nathan transferred a motion to quash to the Northern District of Alabama because discovery had been ongoing since 2016 and the trial Judge had "already addressed rulings related to some of the arguments made by Drummond in support of the motion." No. 21-mc-859 (AJN), 2022 WL 445681, at *2 (S.D.N.Y. Feb. 14, 2022). The same is true here: this case has been before Judge Mariani for five years and he is intimately familiar with the discovery issues brought to the Court to date. To the extent Mr. Cohen's motion relies on Judge Mariani's earlier discovery rulings, *see* Cohen Br. at 3 ("The request to take discovery . . . came a few weeks after a decision partially denying a motion filed by GHI to compel production of plaintiffs' attorney communications with absent class members"), it is even more important that Judge Mariani decide this motion. *See Green v. Cosby*, 216 F. Supp. 3d 560, 565 (E.D. Pa. 2016) (where scope of prior discovery ruling was disputed and would have an impact on the subpoena, "exceptional circumstances exist, such that it is appropriate for this Court to transfer the motion to quash to the issuing court.") (internal quotations omitted).

Likewise, the court in *Flynn v. FCA US LLC* found "exceptional circumstances" warranted transferring a motion to quash a subpoena to the issuing court where (like here) a principal argument in support of the motion to quash was whether the information sought was relevant; the court noted "the centrality of the relevance issue to resolving the motion to quash strongly weighs in favor of transferring the motion to the issuing court." 216 F. Supp. 3d 44, 47 (D.D.C. 2016). The court further found that, like here, there was a "real risk that refusing to transfer could disrupt the very well-managed discovery in the underlying litigation." *Id.* at 48.

"Finally—and perhaps most importantly given the guidance in the relevant Advisory Committee Notes"—the court held that "no undue burden would be imposed" on the non-party corporate witness if the motion were transferred because, despite being headquartered in Washington, D.C., the company admitted that its "interests and reach are far from local in nature" and it was represented by sophisticated counsel.  *Id.*; *see also Alberi v. Aerojet Rocketdyne, Inc.,* No. 22-MC-90 (JPO), 2022 WL 1321373, at *3 (S.D.N.Y. May 3, 2022) ("judicial economy and consistency considerations outweigh any potential burden that a transfer may place on [movant]. This potential burden is especially minimal in light of the fact that [movant's] counsel . . . represents defendants in the underlying action."); *Hoog v. PetroQuest, LLC*, 338 F.R.D. 515, 518 (S.D. Fla. 2021) ("there is no burden or prejudice to Mr. Palumbo to have the Eastern District of Oklahoma resolve this matter upon transfer, especially since Mr. Palumbo's counsel are the very same lawyers who represent the defendants in the underlying litigation."); *Teachers Ins. and Annuity Assoc. of Am. v. Munro*, 1:21-mc-00829 (LAK), 2022 WL 794569 (S.D.N.Y. Jan. 21, 2022); *Honeywell Int'l Inc. v. Mazars USA LLP*, 21 Misc. 870 (ER), 2022 WL 94881 (S.D.N.Y. Jan. 10, 2022).  Because Mr. Cohen has availed himself of the Middle District of Pennsylvania, the same would be true here.

For these reasons, GHI respectfully requests that the Court exercise its authority under Rule 45(f) and transfer this motion to Judge Mariani of the United States District Court for the Middle District of Pennsylvania.

## II.     In the Alternative, GHI's Subpoena is Proper and Mr. Cohen's Motion Should Be Denied

Mr. Cohen failed to, and cannot, carry his burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome, and his conclusory arguments that there is "no need" for GHI to depose him because each topic provided by GHI is "utterly irrelevant" to the

litigation or "privileged," or "could [] be sought from non-counsel sources," *see, e.g.*, Cohen Br. at 8, 10, 12, are legally and factually incorrect. Each of the Second Circuit's *Friedman* considerations—(i) the need to depose the lawyer; (ii) the lawyer's role in connection with the matter in which discovery is sought; (iii) the risk of encountering privilege and work-product issues; and (iv) the extent of already-completed discovery—weighs against Mr. Cohen's request to quash the subpoena.

A.   GHI Has a Substantial Need to Depose Mr. Cohen

All of the topics on which GHI seeks to depose Mr. Cohen, and the subpoena's single document request, are directly relevant to the claims and defenses in the Underlying Action about which Mr. Cohen possesses critical information.

- Given the emphasis Plaintiffs in the Underlying Action have placed on the NYAG's investigation and the AOD, GHI seeks discovery from Mr. Cohen to understand what information he provided to the NYAG that purportedly prompted that investigation. *See* Cohen Decl. Ex. B (ECF No. 3-2) at 5, Topic No. 1. Any exculpatory information that Mr. Cohen possessed but did not share with the NYAG also is relevant. Mr. Cohen is best situated to testify about his interactions with the NYAG and the information that he provided.

- GHI seeks to learn about Mr. Cohen's independent "personal knowledge" of GHI's purported "fraud" and of other relevant facts that Mr. Cohen obtained prior to his involvement in the Underlying Action. *See id.* at 5, Topic Nos. 4, 5. That information has not been produced in the Underlying Action.

- GHI is entitled to probe the factual interrogatory responses that Mr. Cohen personally verified in the Underlying Action. *See id.* at 6, Topic No. 10.

- GHI seeks to discover the factual information Mr. Cohen learned from non-parties and non-clients through his recruitment efforts, *see id.* at 5-6, Topic Nos. 2, 6, 7, 9, 12, including any "purely factual" information he learned by email and in non-privileged Zoom meetings, *see id.* at 6, Topic No. 11, that Judge Mariani already ruled was discoverable.

- GHI seeks to depose Mr. Cohen about the allegations he asserted as a Plaintiff-Relator in the *Qui Tam* action, any evidence in his possession supporting or

refuting those claims, any personal bias he may have against GHI,[8] and his work with a group (the NYC Organization of Public Service Retirees) that has participated in other lawsuits against GHI and has posted interviews with Mr. Cohen on YouTube discussing potential claims against GHI. *See id.*, Topic Nos. 3, 8.

Mr. Cohen's argument that there is no need to depose an attorney "when requested relevant information is available from other sources," Cohen Br. at 8, is based on out-of-circuit cases that do not apply *Friedman*'s flexible, holistic approach. *See Goldberg*, 2020 WL 373206, at *5 ("Under *Friedman's* flexible approach, Plaintiff's failure to exhaust other discovery mechanisms is merely part of the relevant facts and circumstances to be considered and does not preclude taking [the attorneys'] depositions." (internal quotations omitted)).

The other cases Mr. Cohen cites are inapposite. *Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760-PHX-SMB, 2022 WL 1747811 (D. Ariz. May 31, 2022) applied the *Friedman* factors and found that plaintiffs were entitled to depose opposing counsel. Mr. Cohen cites the case to argue that opposing counsel depositions are allowed where advice of counsel is at issue, but there is nothing to suggest that is the *only* circumstance in which they are allowed. Mr. Cohen's reliance on *Rekor Sys. Inc. v. Loughlin*, No. 19-cv-7677 (LJL), 2022 WL 671908 (S.D.N.Y. Mar. 7, 2022) is similarly misplaced because the court reasoned that the *Friedman* factors were only relevant when parties sought to depose trial counsel and the attorney subject to subpoena in that case was a transactional attorney with information about the underlying transaction.. *Clare v. Clare*, No. 4:18-CV-05045-SAB, 2021 WL 6206978 (E.D. Wash. Nov. 16, 2021) applied the *Shelton* standard, which has not been adopted in this Circuit. *See Friedman*, 350 F.3d at 71 ("we have never adopted the *Shelton* rule"). And the court in *Finkel v. Zizza & Assocs. Corp.*, No. 12-CV-4108 (JS) (ARL), 2021 WL 1375655 (E.D.N.Y. Apr. 12, 2021) relied

---

[8] Discovery has revealed, for example, that Mr. Cohen directed individuals to file with regulators complaints against GHI. *See, e.g.*, Kagan Decl. Exs. 16, 17.

on the fact that information sought in the attorney deposition was available from a named party—which is not the case here.

B.  Mr. Cohen's Role as "Litigation Counsel" in the Underlying Action is Virtually Non-Existent

Mr. Cohen has not signed any pleadings filed in in the Underlying Action; he has not taken or defended a deposition; he has not signed or served discovery requests; and he has not participated in any meet and confer calls concerning discovery disputes.  Rather, Susman Godfrey LLP, with six attorneys appearing in the Underlying Action, is Plaintiffs' lead counsel.[9] Accordingly, deposing Mr. Cohen will not disrupt or harm Plaintiffs' case.  *See Johnson v. City of New York*, No. 16 Civ. 6426 (KAM) (VMS), 2018 WL 6727329, at *3 (E.D.N.Y. Dec. 18, 2018) (deposing of one of plaintiff's three attorneys would be "minimally disruptive.")

Mr. Cohen admits that he "conceived" of the Underlying Action, *see* Cohen Decl. ¶ 4 and Cohen Br. at 2, 4 and 11, though not on behalf of any client.  His's pre-suit conduct was admittedly not as a lawyer, and he thus knew or should have known that he could be a key fact witness in the Underlying Action.  *Murata Mfg. Co., Ltd. v. Bel Fuse Inc.,* No. M8-85 (JFK), 2007 WL 1174826, at *2 (S.D.N.Y. Apr. 20, 2007) ("[A] party should not be able to avoid inquiry into a relevant subject by choosing for trial the same attorney who was involved in the events underlying the present action."); *see also Jennings v. Family Mgmt.*, 201 F.R.D. 272, 279 (D.D.C. 2001) (denying motion to quash opposing counsel's deposition where attorney "undertook the risk that she might be called as a key witness"); *United Phosphorous v. Midland Fumigant*, 164 F.R.D. 245, 248 (D. Kan. 1995) ("Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for

---

[9]  Two attorneys from Haggerty Hinton & Cosgrove LLP have appeared on Plaintiffs' behalf, as well.

discovery by virtue of their license to practice law or their employment by a party to represent them in litigation.").

C.    Mr. Cohen's Deposition Would Not Risk Disclosure of Privileged Information

The list of topics on which GHI seeks to depose Mr. Cohen was carefully crafted to avoid issues of attorney-client privilege or work product protection.  As an initial matter, none of Mr. Cohen's pre-litigation actions are protected by the attorney-client privilege or work product doctrine.  *See Goldberg*, 2020 WL 373206, at *5 (holding that plaintiffs showed sufficient need for discovery under *Friedman* where attorney had firsthand knowledge of pre-litigation communications and could speak to "every fact and opinion" contained in attorney's communications with third parties); *see also Doe v. Town of Greenwich*, No. 18-cv-01322, 2019 WL 4267692, at *5 (D. Conn. Sept. 10, 2019) ("Many courts within the Second Circuit have permitted counsel to be deposed or otherwise questioned where counsel participated in pre-litigation meetings that were highly relevant to plaintiffs' claim[.]" (internal quotations and citations omitted)).

Mr. Cohen's conclusory arguments to the contrary are unavailing.  His interactions with the NYAG's office occurred before he was admitted to practice law.  *See supra* p. 2.  Moreover, Plaintiffs and non-parties have already produced numerous emails between Mr. Cohen and non-parties (who never were Mr. Cohen's clients), discussing relevant factual information.  Mr. Cohen's discussions with non-parties (particularly in Zoom meetings or on group email threads), factual evidence supporting or contradicting the claims at issue, the purported "fraud" Mr. Cohen advertised to potential plaintiffs, and Mr. Cohen's role as a *qui tam* Relator and his evidence in support of those claims—just to name a few topics—are not privileged.

Mr. Cohen bears the burden of demonstrating that privilege applies. *In re Grand Jury Subpoenas*, 318 F.3d 379, 384 (2d Cir. 2002) ("It is, moreover, well established that the party invoking a privilege bears the burden of establishing its applicability to the case at hand."); *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 12-mc-00275, 2013 WL 238176, at *2 (S.D.N.Y. Jan. 18, 2013) ("The party asserting the privilege . . . bears the burden of establishing its essential elements." (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011))). But his conclusory argument that "there is a serious risk of encountering privilege and work-product issues during [his] deposition," Cohen Br. at 12, does not satisfy that burden. *See Versatile Housewares*, 2010 WL 11601216, at *6 ("[A]n attorney cannot avoid a deposition by asserting that he or she has no relevant, nonprivileged information…. [A]t a minimum, the attorney must submit to a deposition so that his lack of knowledge may be tested [and] any claimed privilege placed on the record." (citations omitted)); *Chord Assocs. LLC v. Protech 2003-D, LLC*, No. 07-5138 (JFB) (AKT), 2013 WL 12366876, at *6 (E.D.N.Y. Oct. 18, 2013) (holding an attorney's general objections to providing privileged testimony were not sufficient to avoid a deposition).

That Mr. Cohen may possess some privileged information is not a sufficient basis to quash the subpoena. *See Lynch v. City of N.Y.*, No. 16-CV-7355 (LAP), 2021 WL 5140728, at *5 (S.D.N.Y. Nov. 4, 2021) ("[B]ecause privileged material is outside of the valid scope of the subpoena, the subpoena may not be quashed on the basis that it requires disclosure of privileged or other protected matter.") (internal quotations and citations omitted)). To the extent that Mr. Cohen believes that specific deposition questions veer into privileged territory, he can assert appropriate objections at that time. But potential objections to specific questions asked in a deposition that has not yet happened provide no basis to quash the subpoena.[10]

---

[10]   Mr. Cohen's passing and conclusory argument that his "investigation" is protected by New York's SHIELD law, Cohen Br. at 9, is without legal or factual support. The New York SHIELD law, N.Y. Civ. Rights L.

D.    Discovery Taken to Date Weighs Against the Motion

That GHI waited to seek discovery from Mr. Cohen until after it obtained discovery from Plaintiffs and third parties weighs *against*, not in favor of, quashing the subpoena.  *See Weber v. McCormick*, No. 3:06-CV-2009 (PCD), 2008 WL 11489045, at *4 (D. Conn. Mar. 3, 2008) (noting "the fact that the OCSA Defendants still find these depositions necessary after completing most of their discovery weighs against quashing the subpoenas."); *ValveTech, Inc. v. Aerojet Rocketdyne, Inc*., 17-CV-6788-FPG-MJP, 2021 WL 630910 (W.D.N.Y. Feb. 18, 2021) (holding that deposing counsel at a late date in discovery was appropriate when other witnesses were unable to provide sufficient responses to the discovery sought).[11]

* * *

As discussed above, all four *Friedman* factors support GHI's right to depose Mr. Cohen and to obtain relevant, non-privileged information that goes to the heart of Plaintiffs' claims in the Underlying Action.  Mr. Cohen's motion to quash the subpoena should be denied in its entirety.

---

§ 79-h, "provides professional journalists with absolute protection from contempt citations for refusing to disclose the source of confidential news, and qualified protection for refusing to disclose non-confidential news."  *In re Am. Broad. Companies, Inc*., 735 N.Y.S.2d 919, 921 (N.Y. Sup. Ct. 2001).

[11]    GHI attempted to obtain some of the information it now seeks from Mr. Cohen through party discovery and third-party subpoenas.  For example, Plaintiff Davis-Matlock attended a Zoom meeting with Mr. Cohen and others regarding the Underlying Action, but ███████████████████████████████████████████████████████████████████████████.  Kagan Decl. Ex. 19 at 87:4-88:18,105:2-18, 108:20-109:4.

<u>**CONCLUSION**</u>

For the foregoing reasons, GHI respectfully requests that this Court (i) transfer the

motion to the Middle District of Pennsylvania to be heard by Judge Mariani; or, in the

alternative, (ii) deny the motion in its entirety.


Dated: August 17, 2022

Respectfully submitted,

By: */s/ Jared I. Kagan*
      John Gleeson
      Jared I. Kagan
      DEBEVOISE & PLIMPTON LLP
      jgleeson@debevoise.com
      jikagan@debevoise.com
      919 Third Avenue
      New York, NY, 10022
      (212) 909-6000

      *Attorneys for Defendant*
      *Group Health Incorporated*