# Kagan Decl. Ex. 3

ATTORNEY GENERAL OF THE STATE OF NEW YORK

In the Matter of

**Group Health Incorporated**

Assurance No.: 14-181

**ASSURANCE OF DISCONTINUANCE
UNDER EXECUTIVE LAW
SECTION 63, SUBDIVISION 15**

As authorized by Article 22-A of the General Business Law and Executive Law § 63, Eric T. Schneiderman, Attorney General of the State of New York, conducted an investigation into certain representations associated with Group Health Incorporated's ("GHI") Comprehensive Benefits Plan for City of New York ("NYC") employees and retirees. Based upon that investigation, the New York State Office of the Attorney General ("OAG") has made the following findings, and GHI has agreed to modify and/or discontinue certain practices and comply with this Assurance of Discontinuance ("Assurance").

**ATTORNEY GENERAL'S INVESTIGATION**

1. GHI is a subsidiary of EmblemHealth, Inc. ("EmblemHealth"), New York State's largest health insurer. EmblemHealth, through its New York plans, serves approximately 3.4 million people. In 2013, EmblemHealth earned over $10 billion in revenues and net income of approximately $65.8 million.

1

2. GHI is authorized to operate as an indemnity insurer under Article 43 of the New York Insurance Law. Its principal offices are located at 55 Water Street, New York, New York 10041.

3. GHI offers 14 health plans, including individual, small and large group, and city, state and federal employee plans. GHI's Comprehensive Benefit Plan ("GHI Plan") is one of 11 health plans that NYC offers to approximately 626,600 NYC employees and retirees. Of these health plans, the GHI Plan is one of only two plans that reimburses members who receive treatment from providers who are not in the plans' network of providers. The other nine plans offered by NYC generally cover only in-network services.

4. The GHI Plan has approximately 994,500 members. In 2013, 10.9% of the total health services received by GHI Plan members were rendered by out-of-network providers. GHI reimburses GHI Plan members for these out-of-network providers at a rate set out on a payment schedule called the "City of New York Non-Participating Provider Schedule of Allowed Charges" ("Reimbursement Schedule" or "Schedule"). If an out-of-network provider's fees exceed those on the Reimbursement Schedule, the GHI Plan member is responsible for payment of the difference between the provider's fees and GHI's reimbursement payment if the provider seeks to collect the balance.

5. The Reimbursement Schedule is a spreadsheet that is several hundred pages long and consists of columns for: CPT Code[1]; CPT Code Modifier; Description (of the procedure or service); Provider Type; Place of Service; Service Type; and Reimbursement Amount.

---

[1] "CPT Code" or "Current Procedure Terminology Code" is a medical code set and maintained by the American Medical Association, and is used to report medical procedures and services under both public and private health insurance programs.

2

6. The NYC Summary Program Description ("Summary Program Description") is a document prepared by the NYC Office of Labor Relations for NYC employees and retirees that includes summaries of the health plans offered by NYC. The information in the Summary Program Description is provided to NYC employees and retirees, among other purposes, to help them select a health plan. GHI prepared the section describing the GHI Plan for NYC's use in the Summary Program Description.

7. The Attorney General's investigation identified four problems concerning either the Reimbursement Schedule or GHI's disclosures to consumers and members. First, GHI does not sufficiently make the Schedule available to GHI Plan members and prospective members. Second, GHI does not sufficiently describe the limitations of GHI Plan's reimbursement of out-of-network providers and the resulting financial consequences to members and prospective members. Third, GHI does not sufficiently describe the circumstances by which members may unknowingly encounter out-of-network providers. Finally, GHI misrepresents the frequency with which the Schedule is updated.

### GHI Does Not Sufficiently Make the Reimbursement Schedule Available to GHI Plan Members and Prospective Members

8. The Summary Program Description sets forth that a "copy of the Schedule is available for inspection at GHI." Additionally, in the GHI Plan's Certificate of Insurance, GHI represents that Schedule information is available for inspection at GHI offices and the State of New York Insurance Department.

9. In early 2013, the OAG became aware that the Schedule was not available for inspection at all of the locations listed in the GHI Plan's Certificate of Insurance. Further, NYC

3

employees and retirees could not access a copy of the Schedule through phone requests or e-mail communications to GHI's customer service representatives.

10. GHI customer service representatives could provide the reimbursement amounts for out-of-network services in the event that the member could give the representative the specific medical procedure code/s (CPT code). GHI did not, however, include anything in the GHI Plan materials that advised the GHI Plan members that if they wanted information about the out-of-network reimbursement rates that they would need to call customer service with the applicable CPT code, and that they would have to obtain that CPT code from the provider.[2]

### GHI Does Not Sufficiently Describe the Limitations of GHI Plan's Reimbursement of Out-of-Network Providers and the Resulting Financial Consequences to Members and Prospective Members

11. GHI created the Reimbursement Schedule in or around 1983 based on medical procedure rates at that time. GHI does not explain that the reimbursement rates are comparatively low when measured against other reimbursement methodologies nor does it explain that members are likely to incur substantial out-of-pocket expenses when they use out-of-network providers. GHI has not provided any examples (until recently, during the course of the Attorney General's investigation) of how much the Schedule will reimburse for out-of-network services and what the member financial responsibility will be for those services.

12. Documents prepared for prospective and current GHI Plan members merely suggest that it is only a possibility that members will be required to pay for out-of-network services. For example, the Summary Program Description states that "[t]he reimbursement levels, as provided by

---

[2] CPT Code information is not easily accessible to consumers. Consumers frequently do not know which services will be administered by the provider during a medical visit. Therefore, consumers often need to seek out the specific CPT Code/s from the provider.

4

the Schedule, may be less than the fee charged by the non-participating provider." The GHI Plan Certificate of Insurance sets forth that the:

> Allowed Charges for basic benefits for covered services which are rendered by non-participating providers are based upon 1983 procedure allowances. Some allowances have been increased from time to time. The Allowed Charge *may be less* than the fee charged by a non-participating provider. You must pay any difference between the Allowed Charge and the non-participating provider's fee . . . . [emphasis added]

13. However, it is highly likely that GHI Plan members will be required to pay for out-of-network services. The reimbursement amounts in the Schedule are in most, if not all, circumstances less -- and in many instances, *far less* -- than the actual fees charged by out-of-network providers. Thus, in many instances, the small reimbursement amount will result in substantial out-of-pocket costs for the consumer.[3] GHI's materials do not accurately set forth the potentially wide gap between the out-of-network reimbursement and out-of-network charges, and potentially substantial out-of-pocket amounts for which GHI Plan members will be responsible.

14. For example, if a GHI Plan member makes an emergency room visit in the Bronx, and is treated by an out-of-network specialist (e.g., an orthopedic surgeon), the estimated provider charge for this service is approximately $342.[4] **Reimbursement under the Schedule is $36, leaving the employee or retiree with a balance of over $300.**

15. Likewise, if a GHI Plan member sees an out-of-network provider for a 25- minute outpatient office visit, the estimated provider charge for this service in Manhattan is approximately

---

[3] Depending on the service or services obtained from the out-of-network provider, the out-of-pocket costs can be in the hundreds or thousands of dollars.
[4] Data obtained from FAIR Health, Inc. (http://www.fairhealthconsumer.org/medicalcostlookup/). CPT Code 99285 and Zip Code 10462. For purposes of this Assurance the estimated charge is set at FAIR Health's 50th percentile.

5

$247.[5]$ **Reimbursement under the Schedule is $36, leaving the employee or retiree with a balance of $211.**

16. If a GHI Plan member seeks a hip replacement and goes to an out-of-network provider, the estimated provider charge for this service in Queens is approximately $7,375.[6] **Reimbursement under the Schedule is $2,732, leaving the employee or retiree with a balance of over $4,600.**

17. In these scenarios, as well as many others, the GHI Plan member without access to the Schedule and/or reimbursement amounts for a particular medical service, cannot make a well-informed choice as to whether to go to the out-of-network provider or stay in-network (and pay only their co-payments). Similarly, NYC employees and retirees cannot make well-informed decisions in selecting the appropriate health plan, if they are not afforded adequate information regarding the substantial out-of-pocket costs they may incur if they receive services from out-of-network providers, including when received under emergency circumstances.

### GHI Does Not Sufficiently Describe the Circumstances by Which Members May Unknowingly Encounter Out-of-Network Providers

18. The Reimbursement Schedule sets forth the payment amounts for out-of-network providers. In many instances, since GHI provides an out-of-network benefit, members affirmatively select providers who are not in GHI's network of providers. However, members also involuntarily encounter out-of-network providers in two unplanned instances: (1) as a result of a scheduled hospital admission (in-patient or out-patient) when a provider on the medical team (e.g., radiologist,

---

[5] Id. CPT Code 99214 and Zip Code 10271. For purposes of this Assurance the estimated charge is set at FAIR Health's 50th percentile.

[6] Id. CPT Code 27130 and Zip Code 11030. For purposes of this Assurance the estimated charge is set at FAIR Health's 50th percentile.

6

anesthesiologist) may not be in-network; (2) as a result of an emergency hospitalization, when a provider in the emergency room is not a hospital employee nor a participating provider in the GHI Plan. In these instances, the member may not know which physicians and providers will attend to them, whether those individuals are not employees of the hospital and will therefore bill separately or what their fees will be.

19. The unplanned instances in which members may encounter out-of-network providers and the gravity of the financial implications associated with receiving services from unknown or unexpected out-of-network providers (given that reimbursement for those services are based on 1983 rates and will very likely result in substantial out-of-pocket expenses), should be better described in the documents describing the GHI Plan. For example, the GHI Plan's Certificate of Insurance does not make any such descriptions. Significantly, GHI in its marketing materials (NYC Open Enrollment Brochure), did not sufficiently emphasize the possibility of steep out-of-pocket costs for the consumer in the event of an emergency room visit or a scheduled procedure where an out-of-network provider is providing services as part of a surgical/procedure team:

> Certain services billed by physicians and providers who are not hospital employees during an emergency room visit or inpatient stay may not be considered to be part of your emergency room and/or hospitalization benefit. These services are covered according to the terms and conditions that otherwise apply to the type of service under the [GHI P]lan.

20. With better descriptions of the substantial costs that prospective members may face in the instance of an emergency room visit or a scheduled procedure where an out-of- network provider participates on the surgical/procedure team, consumers will have information to make more informed choices with respect to their health plans.

**GHI Misrepresents the Frequency With Which the Schedule is Updated**

21. GHI's documents misrepresent the Schedule's updating of allowances or "reimbursement amounts." For example, the GHI Plan's Certificate of Insurance represents that some reimbursement amounts "have been increased from time to time." Similarly, the Summary Program Description states that some reimbursement amounts "have been increased periodically." In actuality, very few, if any, reimbursement amounts in the Schedule have been increased since 1983. Apart from adding new procedures to the Schedule, GHI has not updated the vast majority of the reimbursement amounts in the Schedule in three decades.

22. In order for (a) NYC employees and retirees to make well-informed decisions regarding whether to select the GHI Plan as their health plan, and (b) GHI Plan members to make well-informed decisions regarding whether or not to seek services from out-of-network providers, they should have both accurate and relevant information about the terms of coverage for out-of-network services and also how to obtain specific information regarding how much GHI will reimburse for out-of-network services in advance of obtaining the service.

### I. RELEVANT LAWS

23. Article 22-A of the New York State General Business Law prohibits "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state...." (General Business Law § 349[a]).

24. Article 22-A of the New York State General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state...." (General Business Law § 350).

25. Executive Law § 63(12) prohibits repeated fraudulent or illegal acts in the transaction of business.

26. The OAG finds that the practices described above constitute repeated violations of Executive Law § 63(12) and General Business Law §§ 349 and 350.

**NOW, WHEREAS**, GHI neither admits nor denies the OAG's findings above and the OAG is willing to accept the terms of this Assurance under Executive Law § 63(15) and to discontinue this investigation; the parties each believe that the obligations imposed by this Assurance are prudent and appropriate; and the OAG has determined that this Assurance is in the public interest.

**IT IS HEREBY UNDERSTOOD AND AGREED**, by and between the parties that:

## II. PROSPECTIVE RELIEF

27. Within sixty (60) days of the Effective Date of this Assurance, GHI will modify all GHI Plan consumer-facing materials,[7] including the GHI Plan Certificate of Insurance, GHI Plan marketing materials, and communications to NYC employees and retirees regarding its out-of-network coverage, so as to ensure that NYC employees and retirees are presented with clear information: (a) as to how to obtain out-of-network reimbursement rates from GHI for identified procedures (by contacting customer service or through accessing a GHI website); (b) that GHI Plan members are likely to incur substantial out-of-pocket expenses when out-of-network providers are used; (c) that during a hospital admission (in-patient or out-patient, emergency or non-emergency) services may be provided by out-of-network providers --even if the facility and/or some of the other

---

[7] All consumer-facing materials that describe or mention the availability of out-of-network benefits.

providers are in network-- which is likely to result in substantial out-of-pocket expenses; and (d) that the Schedule is based on 1983 procedure rates that have not been increased since that time.

28. GHI prepared language for, and will within thirty (30) days of the Effective Date of this Assurance, recommend that the NYC Office of Labor Relations adopt such language in the Summary Program Description regarding the GHI Plan's out-of-network benefits so that it includes information: (a) as to how to obtain out-of-network reimbursement rates from GHI for identified procedures (by contacting customer service or through accessing a GHI website); (b) that GHI Plan members are likely to incur substantial out-of-pocket expenses when out-of-network providers are used; (c) that during a hospital admission (in-patient or out-patient, emergency or non-emergency) services may be provided by out-of-network providers --even if the facility and/or some of the other providers are in network -- which is likely to result in substantial out-of-pocket expenses; and (d) that the Schedule is based on 1983 procedure rates that have not been increased since that time.

29. Within sixty (60) days of the Effective Date of this Assurance, GHI will train its staff and modify its out-of-network services practices, procedures, and policies in order to fully comply with the requirements of this Assurance, and will provide new training materials, together with a specific script for customer service, to the OAG for OAG approval.

30. Within one hundred twenty (120) days of the Effective Date of this Assurance, GHI will create a website available to NYC employees and retirees that provides information on how much GHI will reimburse GHI Plan members for particular services obtained from out-of-network providers.

31. Within ninety (90) days of the Effective Date of this Assurance, GHI will update its GHI Plan member complaint recording and tracking policies and practices so as to include improved

functionality that will permit GHI to: (a) electronically search for complaints regarding the accessibility of the Schedule; (b) electronically search for complaints regarding requests for out-of-network reimbursement information; (c) electronically search for complaints regarding reimbursement for emergency services or services stemming from emergency hospital admissions; (d) establish adequate search categories to sufficiently identify the range of the out-of-network complaints received by GHI; and (e) run electronic reports that can identify the volume of out-of-network complaints by category, along with the resolution for each complaint.

32. Within ninety (90) days of the Effective Date of this Assurance, GHI will assist GHI Plan members who contact GHI prior to receiving pre-scheduled medical procedures to find participating providers (including ancillary providers, e.g., anesthesiologists and radiologists) so as to ensure that the member can stay in-network. If GHI cannot identify participating providers to provide the ancillary medical services for GHI Plan members' pre-scheduled medical procedures, then GHI will treat claims for non-participating providers as if they were performed by participating providers. GHI may consider entering into single case agreements with the non-participating providers or agreeing to pay non-participating providers' charges so as not to leave the member with a balance bill (other than applicable cost-sharing, e.g., deductibles and copayments).

33. Within ninety (90) days of the Effective Date of this Assurance, for GHI Plan members who, (a) either in the context of a scheduled procedure in which the member has ascertained the primary providers are participating or (b) receive treatment in an emergency room or (c) in the hospital stemming from an emergency room admission, is treated by non-participating provider(s) (who GHI is responsible for providing coverage) and seeks assistance from GHI regarding the non-participating provider's balance bill, GHI will work to negotiate the GHI Plan

member's payment obligations with respect to the non-participating provider. If such a non-participating provider pursues a collection action and/or legal action against a GHI Plan member for payment to a non-participating provider, GHI will assist/defend the GHI Plan member if the GHI Plan member notifies GHI of the action, to ensure, to the extent possible and subject to benefit plan limitations, that the member is held harmless.

### III.  CONSUMER ASSISTANCE FUND

34. Within ninety (90) days of the Effective Date of this Assurance, GHI will transfer a sum of three million five hundred thousand dollars ($3,500,000) to NYC for the establishment of a Consumer Assistance Fund ("The Fund") to assist current and former NYC employees, retirees, and their dependents with medical expenses or debt stemming from having accessed out-of-network services. Additionally, one hundred twenty thousand dollars ($120,000) to fund two (2) full-time equivalents ("FTE") to staff and oversee The Fund annually and pro-rated amounts thereafter for the duration of The Fund's operation and NYC's reporting obligations, and fifty thousand dollars ($50,000) for anticipated costs related to the administration (e.g. programming, scanning, and mailing) of The Fund will be borne by GHI. GHI will be responsible for mailing, and any expenses related thereto, The Fund notice ("Notice") provided to eligible GHI Plan members (as determined by the OAG) in the form and in the timeframes designated by the OAG.

35. Within fifteen (15) days of the Effective date of this Assurance, GHI will designate a specific GHI employee/s to assist NYC with the administration of The Fund including, but not limited to, helping to verify (i) consumer enrollment in the GHI Plan, and (ii) that claims submitted were for covered services.

36. Within fifteen (15) days of the agreed upon mail date for the Notice with NYC, GHI will notify current GHI Plan members through existing communication channels (e.g., newsletters, website, and through customer service) of the availability of The Fund.

### IV. PAYMENTS TO THE STATE

37. Within thirty (30) days of the Effective Date of this Assurance, GHI will pay $300,000 (three hundred thousand dollars) to the OAG in penalties.

### V. CORRESPONDENCE AND PAYMENT

38. All notices, reports, requests, and other communications to any party pursuant to this Assurance will be in writing and will be directed as follows:

> If to the OAG to:
>
> Brant Campbell
> Assistant Attorney General
> Office of the Attorney General
> Health Care Bureau
> 120 Broadway, 26th Floor
> New York, New York 10271
>
> If to GHI to:
>
> Jeffrey Chansler
> Senior Vice President, Deputy General Counsel
> EmblemHealth
> 55 Water Street
> New York, NY 10041

39. All checks issued pursuant to this Assurance will be made payable to "State of New York Department of Law."

40. All payments and correspondence related to this Assurance must reference "Assurance 14-181."

## VI. MISCELLANEOUS

### Successors and Third Parties

41. This Assurance and all obligations imposed on or undertaken by GHI herein, will be binding upon and enforceable against GHI and its officers, directors, agents, employees and assignees, and any subsequent owner or operator (whether by merger, transfer of control, contractual arrangements or other means) of GHI.

### GHI's Representations

42. The OAG has agreed to the terms of this Assurance based on, among other things, the representations made to the OAG by GHI and its counsel and the OAG's own factual investigation. To the extent that any material representations are later found to be inaccurate or misleading, this Assurance is voidable by the OAG in its sole discretion.

### No Deprivation of the Public's Rights

43. Nothing herein will be construed to deprive any person of any private right under law or equity.

### No Blanket Approval by the Attorney General of GHI's Practices

44. Acceptance of this Assurance by the OAG will not be deemed or construed as approval by the OAG of any of GHI's acts or practices, and GHI will make no representation to the contrary.

### Monitoring by the OAG

45. To the extent not already provided under this Assurance, GHI will, upon request by the OAG, provide all documentation and information necessary for the OAG to verify compliance with this Assurance, at GHI's expense. This Assurance does not in any way limit the OAG's right to obtain, by subpoena or by any other means permitted by law, documents, testimony, or other information.

### No Limitation on the Attorney General's Authority & GHI's Duty to Honor Investigation and Obligations

46. Nothing in this Assurance in any way limits the OAG's ability to investigate or take other action with respect to any non-compliance at any time by GHI with respect to this Assurance, or GHI's noncompliance with any applicable law with respect to any matters.

### Nondisparagement of Assurance

47. GHI will not take any action or make any statement denying, directly or indirectly, the propriety of this Assurance or expressing the view that this Assurance is without factual basis. Nothing in this paragraph affects GHI's (a) testimonial obligations or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which OAG is not a party.

### Governing Law; Effect of Violation of Assurance of Discontinuance

48. Under Executive Law § 63(15), evidence of a violation of this Assurance will constitute prima facie proof of a violation of the applicable law in any action or proceeding thereafter commenced by the OAG.

49. This Assurance will be governed by the laws of the State of New York without regard to any conflict of laws principles.

50. If a court of competent jurisdiction determines that GHI has breached this Assurance, GHI will pay to the OAG the cost, if any, of such determination and of enforcing this Assurance, including without limitation legal fees, expenses, and court costs.

51. In the event that any one or more of the provisions contained in this Assurance will for any reason be held to be invalid, illegal, or unenforceable in any respect, in the sole discretion of the OAG such invalidity, illegality, or unenforceability will not affect any other provision of this Assurance.

52. Any failure by the OAG to enforce this entire Assurance or any provision thereof with respect to any deadline or any other provision herein will not be construed a waiver of the OAG's right to enforce other deadlines and provisions of this Assurance.

**Entire Agreement; Amendment**

53. No representation, inducement, promise, understanding, condition, or warranty not set forth in this Assurance has been made to or relied upon by GHI in agreeing to this Assurance.

54. This Assurance contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties, and the Assurance is not subject to any condition not provided for herein. This Assurance supersedes any prior agreements or understandings, whether written or oral, between the OAG and GHI regarding the subject matter of this Assurance.

55. This Assurance may not be amended or modified except in an instrument in writing signed on behalf of all the parties to this Assurance.

56. The division of this Assurance into sections and subsections and the use of captions and headings in connection herewith are solely for convenience and will have no legal effect in construing the provisions of this Assurance.

### Binding Effect

57. This Assurance is binding on and inures to the benefit of the parties to this Assurance and their respective successors and assigns, provided that no party, other than the OAG, may assign, delegate, or otherwise transfer any of its rights or obligations under this Assurance without prior written consent of the OAG. GHI represents and warrants, through the signatures below, that the terms and conditions of this Assurance are duly approved, and execution of this Assurance is duly authorized.

### Effective Date

58. This Assurance is effective on the date that it is signed by the Attorney General or his authorized representative (the "Effective Date"), and the document may be executed in counterparts, which will all be deemed an original for all purposes.

**AGREED TO BY THE PARTIES:**

Dated: *September 5*, 2014

**Group Health Incorporated**

By: _____
Nicholas Kambolis, Esq.
General Counsel Emblem Health

CONSENTED TO:

Dated: New York, New York

September 8, 2014

                **ERIC SCHNEIDERMAN**
                Attorney General of the State of New York

                LISA LANDAU
                Health Care Bureau Chief

                By: _____
                      BRANT CAMPBELL
                      Assistant Attorney General
                      Health Care Bureau