# Kagan Decl. Ex. 9

# In the Matter Of:

*Plavin vs*

*Group Health Incorporated*

## *ALAN BERKOWITZ*

## *July 21, 2022*



## Page 1

```
 1         IN THE UNITED STATES DISTRICT COURT FOR THE
             MIDDLE DISTRICT OF PENNSYLVANIA
 2                       _ _ _
 3   STEVEN PLAVIN, GARY ALTMAN,    :
     MICHELLE DAVIS-MATLOCK, and    :
 4   DANIELLE THOMAS, on behalf of  :
     themselves and all others      :
 5   similarly situated,            : C.A. No. 3:17-cv-01462
                                    :
 6   Plaintiffs,                    : (Hon. Robert D. Mariani)
                                    :
 7        vs.                       :
                                    :
 8   GROUP HEALTH INCORPORATED,     :
                                    :
 9        Defendant.                :
10                       _ _ _
11                  JULY 21, 2022
                         _ _ _
12
13       Video-recorded deposition of ALAN W.
14   BERKOWITZ, taken remotely, before Patricia R.
15   Frank, Registered Merit Reporter, Certified
16   Realtime Reporter, and Notary Public, commencing
17   at 10:06 a.m. EDT, on the above date.
18
19                       _ _ _
```

## Page 2

```
 1   A P P E A R A N C E S:
 2   (All parties appearing remotely)
 3
 4   ATTORNEYS FOR PLAINTIFFS AND THE WITNESS:
 5        SUSMAN GODFREY L.L.P.
          BY: NICHOLAS C. CARULLO, ESQUIRE
 6        1301 Avenue of the Americas
          32nd Floor
 7        New York, NY 10019
          212.729.2026
 8        ncarullo@susmangodfrey.com
 9
     ATTORNEYS FOR DEFENDANT:
10
          DEBEVOISE & PLIMPTON LLP
11        BY: JUSTIN C. FERRONE, ESQUIRE
              JARED I. KAGAN, ESQUIRE
12        919 Third Avenue
          New York, NY 10022
13        212.909.6000
          jcferrone@debevoise.com
14        jikagan@debevoise.com
15
16
     ALSO PRESENT:
17
          AYDALINE GARCIA, Videographer
18        and Document Tech
```

## Page 3

```
 1                    I N D E X
 2
 3   Witness                                       Page
 4   ALAN W. BERKOWITZ
 5     By Mr. Ferrone                              8
 6
 7              E X H I B I T S
 8        (Exhibits attached to transcript in hard
 9   copy format and/or electronically.)
10
     Marked for I.D.                               Page
11
     Exhibit 1      Notice of Subpoena to          22
12                  Mr. Berkowitz
13   Exhibit 2      June 28, 2022 e-mail from      24
                    Justin C. Ferrone to Nick
14                  Carullo and others containing
                    search terms
15
     Exhibit 3      E-mail chain                   29
16                  BERKOWITZ_000000078-000000081
17   Exhibit 4      E-mail chain                   38
                    BERKOWITZ_000000082-000000085
18
     Exhibit 5      Complaint filed in the United  41
19                  States District Court for the
                    Middle District of Pennsylvania
20                  Plavin, et al. v. GHI
21   Exhibit 6      First Amended Class Action     46
                    Complaint
22
     Exhibit 7      E-mails                        47
23                  BERKOWITZ_000000142
24
25   (Index cont'd. on next page)
```

## Page 4

```
 1   (Index cont'd.)
 2   Marked for I.D.                                Page
 3   Exhibit 8      E-mails                         56
                    BERKOWITZ_000000143-000000144
 4
     Exhibit 9      April 16, 2019 e-mail from      60
 5                  keystonecop1@verizon.net to
                    keystonecop1@verizon.net
 6                  PLAVIN_000004335-000004343
 7   Exhibit 10     March 25, 2020 e-mail from      71
                    keystonecop1@verizon.net to
 8                  Louis Hollander, Jr.
                    PLAVIN_000004008-000004011
 9
     Exhibit 11     Emails                          78
10                  BERKOWITZ_000000102-000000111
11   Exhibit 12     August 1, 2020 e-mail from      82
                    keystonecop1@verizon.net to
12                  Louis Hollander, Jr.
                    PLAVIN_000004810-000004823
13
     Exhibit 13     E-mails                         88
14                  BERKOWITZ_000000008-000000042
15   Exhibit 14     E-mails                         95
                    BERKOWITZ_000000043
16
     Exhibit 15     E-mails                         100
17                  BERKOWITZ_000000050-000000054
18   Exhibit 16     E-mails                         109
                    BERKOWITZ_000000061-000000074
19
     Exhibit 17     E-mails                         115
20                  BERKOWITZ_000000114-000000119
21   Exhibit 18     E-mails                         122
                    BERKOWITZ_000000130
22
     Exhibit 19     E-mails                         125
23                  BERKOWITZ_000000122-000000123
24
25   (Index cont'd. on next page)
```

Page 5

1  (Index cont'd.)
2  Marked for I.D.                                    Page
3  Exhibit 20      E-mails, 3 pgs.                    133
4  Exhibit 21      E-mail chain                       136
                   PLAVIN_000005424-000005425
5
   Exhibit 22      E-mails                            142
6                  BERKOWITZ_000000147
7  Exhibit 23      E-mails                            147
                   BERKOWITZ_000000148-000000153
8
   Exhibit 24      Plaintiffs' Objections and         154
9                  Responses to Defendant's Second
                   Set of Interrogatories
10                           - - -

Page 6

1           THE VIDEOGRAPHER:  We are going on the
2  record for the remote video deposition of Alan
3  Berkowitz on July 21, 2022, at 10:06 a.m. Eastern
4  Time in the matter of Plavin versus GHI.
5           My name is Aydaline Garcia, and I'll be
6  video recording today's remote deposition on behalf
7  of Lexitas.
8           Will counsel please introduce themselves
9  for the record.
10          MR. FERRONE:  Justin Ferrone, Debevoise
11 & Plimpton, representing defendant Group Health
12 Incorporated, and I'm joined by my colleague Jared
13 Kagan.
14          MR. CARULLO:  Nick Carullo from Susman
15 Godfrey on behalf of the witness.
16          THE VIDEOGRAPHER:  Would the court
17 reporter please swear in the witness.
18          THE COURT REPORTER:  The attorneys
19 participating in this proceeding acknowledge that I
20 am not physically present in the deposition room and
21 that I will be reporting this deposition remotely.
22 They further acknowledge that, in lieu of an oath
23 administered in person, the witness will verbally
24 declare his testimony in this matter is under
25 penalty of perjury.

Page 7

1           The parties and their counsel consent to
2  this arrangement and waive any objections to this
3  manner of reporting.  Please indicate your agreement
4  by stating your name and your agreement on the
5  record.
6           **THE WITNESS:  My name is Alan W.**
7  **Berkowitz, and I agree.**
8           MR. FERRONE:  Justin Ferrone from
9  Debevoise & Plimpton.  I agree as well.
10          MR. CARULLO:  Nick Carullo from Susman
11 Godfrey.  I also agree.
12          THE COURT REPORTER:  Will the witness
13 please state and spell your first and last name for
14 the record.
15          **THE WITNESS:  Alan, A-L-A-N, W.**
16 **Berkowitz, B-E-R-K-O-W-I-T-Z.**
17          THE COURT REPORTER:  Will the witness
18 now please repeat the following declaration for the
19 record:  "I declare my testimony in this matter is
20 under penalty of perjury."
21          **THE WITNESS:  I declare my testimony in**
22 **this matter is under penalty of perjury.**
23          THE COURT REPORTER:  The witness having
24 declared that his testimony in this matter is under
25 penalty of perjury, and the parties having stated

Page 8

1  their agreement on the record, you may proceed.
2           MR. FERRONE:  Thank you.  Thank you,
3  Mr. Berkowitz.
4  BY MR. FERRONE:
5       Q.   Thank you, Mr. Berkowitz.  Good morning
6  to you.
7       **A.   Good morning.**
8       Q.   Thank you for fighting through some
9  technical difficulties.  I appreciate you making the
10 effort and being here today.
11          For the record, could you please state
12 and spell your name and provide your current
13 address.
14      **A.   Alan, A-L-A-N, W. Berkowitz,**
15 **B-E-R-K-O-W-I-T-Z, 7519 South Blue Spring Drive,**
16 **Parkland, Florida, 33067.**
17      Q.   Thank you.
18          Have you ever been deposed before,
19 Mr. Berkowitz?
20      **A.   Yes.**
21      Q.   In what circumstances?
22      **A.   I am a former New York City police**
23 **detective.**
24      Q.   And you were deposed as a former New York
25 City police detective?

Page 29

1  e-mails?
2       MR. CARULLO: Object to the form.
3       THE WITNESS: No.
4       MR. FERRONE: Ms. Garcia, could you
5  please introduce tab 2 and mark it as Exhibit 3.
6       (Exhibit 3 marked for identification.)
7       THE VIDEOGRAPHER: Do you want control
8  of the document, counsel?
9       MR. FERRONE: Yeah, that would be
10 helpful. Thank you.
11 BY MR. FERRONE:
12   Q.   So, Mr. Berkowitz, I'm going to -- I can
13 scroll through this document to make sure you have a
14 chance to read it. I can start from the bottom,
15 which would be the oldest e-mail in the chain, and I
16 can move up or down however quickly you'd like me to
17 do that.
18       So the bottom is way down here and it
19 starts here. And for the record, I will just say
20 that this document is a document produced by
21 Mr. Berkowitz with the Bates number of
22 BERKOWITZ_000000078, and it's Exhibit 3.
23       So, Mr. Berkowitz, I'll scroll up to
24 where there's text.
25   A.   Okay. Yeah, I see what you're sending or

Page 30

1  what you're producing.
2    Q.   So, Mr. Berkowitz, have you seen this
3  document before?
4    A.   I've seen the document before, yes.
5    Q.   What is this document?
6    A.   It's different e-mails from different
7  people regarding -- it says "a class action
8  lawsuit," and it's basically Steve Cohen, but I
9  honestly don't know if there's a class action
10 lawsuit.
11   Q.   Okay. So I'm going to scroll down to
12 Mr. Cohen's e-mail here, and I'll show you --
13   A.   Okay.
14   Q.   -- this looks like it's from -- this part
15 of the e-mail is from NYPD Shomrim Society. Did I
16 say that correctly?
17   A.   Correct.
18   Q.   What is the NYPD Shomrim Society?
19   A.   It's an organization of Jewish police
20 officers.
21   Q.   So is that a group that you're affiliated
22 with?
23   A.   I'm affiliated as a member. I never sent
24 them that e-mail.
25   Q.   And the subject here is "GHI Lawsuit,"

Page 31

1  correct? So if we scroll down, it says "GHI
2  Lawsuit."
3       Do you recall receiving this message?
4    A.   I believe that may have been the original
5  e-mail that I received from Mr. Cohen.
6    Q.   And this is dated March -- I'm sorry --
7  May 26, 2017; is that correct?
8    A.   But that's not from Mr. Cohen.
9    Q.   Right. Well, so this e-mail is from the
10 NYPD Shomrim Society to you, correct?
11   A.   Correct.
12   Q.   And as we scroll down, it seems to
13 include a message from Mr. Cohen.
14   A.   Correct.
15   Q.   Okay. So does that refresh your
16 recollection as to whether this is the first time
17 Mr. Cohen e-mailed you?
18   A.   No, not at all. I'm receiving an e-mail
19 from the Shomrim Society. I can't tell you when
20 Mr. -- Mr. Cohen sent something to me five or six
21 years ago. I don't remember.
22   Q.   But since this is from the Shomrim
23 Society, it wasn't from Mr. Cohen, right? So this
24 wouldn't have been the first time he e-mailed you?
25   A.   He did not e-mail me this.

Page 32

1    Q.   So looking at this message, Mr. Cohen
2  writes "Looking for plaintiffs for a possible class
3  action suit against GHI. Specifically, looking
4  for," and then he lists criteria.
5       One of them is a current GHI policyholder
6  living out of state, and second is a current GHI
7  policyholder living out of state who has used and --
8  which I think he meant "an" -- out-of-network doctor
9  or facility since 2015.
10      Do you see that?
11   A.   Yes.
12   Q.   Do you have any understanding of what he
13 meant by that?
14   A.   No.
15   Q.   Would you fit that criteria?
16   A.   No.
17   Q.   So you were not at that time a current
18 GHI policyholder living out of state?
19   A.   GHI was my secondary. Medicare was my
20 primary. Medicare covered my cost. GHI covered the
21 20 percent. So if I received something from GHI, I
22 threw it away. Did not pertain to me.
23   Q.   Thank you.
24      When did you go on Medicare?
25   A.   January 1, 1989.

Page 121

1  BY MR. FERRONE:
2    Q.   And do you understand that you agree to
3  pay a premium and the insurance company agrees to
4  provide the contracted-for benefits, right?
5         MR. CARULLO:  Object to the form.
6         THE WITNESS:  Correct.
7  BY MR. FERRONE:
8    Q.   And in the case of the GHI Comprehensive
9  Benefits Plan, the members didn't personally pay the
10 premium; the City paid it on their behalf.  Is that
11 right?
12   A.   Correct.
13   Q.   And the members of the Comprehensive
14 Benefits Plan were entitled only to the coverage
15 that the City and the unions negotiated; is that
16 right?
17   A.   Correct.
18   Q.   So members were not entitled to rates
19 that are not listed in the policy documents; is that
20 right?
21        MR. CARULLO:  Object to the form.
22        THE WITNESS:  Yes.
23 BY MR. FERRONE:
24   Q.   And if members wanted different rates to
25 be included in the policy documentation, they should

Page 122

1  have told their unions to negotiate for higher
2  rates; is that right?
3         MR. CARULLO:  Object to the form.
4         THE WITNESS:  Yes.
5         MR. FERRONE:  I think we can put that
6  document away.  And let's go to tab 18, please,
7  which I think will also be Exhibit 18.
8         (Exhibit 18 marked for identification.)
9  BY MR. FERRONE:
10   Q.   Exhibit 18 is a document that you
11 produced in this case, Mr. Berkowitz, with the Bates
12 number 0000000130, and it's an e-mail from
13 berky4@aol.com to -- strike that.  Sorry.
14        Going down is an e-mail from Alan Mail to
15 Steve Cohen on Sunday, May 28, 2017, at 9:26 a.m.
16   A.   Yes.
17   Q.   Do you see that?
18        So the top e-mail is from you to
19 Mr. Cohen, but the bottom e-mail, excuse me, is also
20 dated May 28.  It's from Mr. Cohen.  It appears to
21 be to you.
22        And Mr. Cohen writes, "Alan, Apparently
23 there is a typo in the e-mail you sent out about the
24 GHI class action; my correct e-mail address is," and
25 he goes on to list his address.

Page 123

1         Do you see that?
2    A.   Yes.
3    Q.   He also adds, "Arnie Fisher was under the
4  impression that people who live in New York are not
5  eligible to part of the suit.  Not true.  Most of
6  the folks affected live in New York.  Last week, I
7  just happened to need people who lived outside New
8  York to establish federal jurisdiction."
9         Do you see all that?
10   A.   Yes.
11   Q.   So I think we might have talked about
12 this before but just refresh my recollection.  Who
13 is Arnie Fisher?
14   A.   A retired captain that I know.
15   Q.   Okay.  And do you have any -- did you
16 discuss with Arnie Fisher the criteria for people
17 who can participate in the lawsuit?
18   A.   No.
19   Q.   Okay.  Did you discuss with Steve Cohen
20 the criteria for people who could participate in the
21 lawsuit?
22   A.   No.
23   Q.   Okay.  Do you have any understanding
24 about why Mr. Cohen was looking for people who lived
25 outside of New York to establish federal

Page 124

1  jurisdiction?
2    A.   No.
3    Q.   Did you ever discuss that with him?
4    A.   No.
5    Q.   The last sentence of Mr. Cohen's e-mail
6  says, "So if I could impose upon you once more to
7  resend the e-mail out to Shomrim members with the
8  correct e-mail; and making clear it is not limited
9  to out-of-state folks."
10        Do you see that?
11   A.   Yes.
12   Q.   And then you respond above that "Done to
13 my e-mail list only not to Shomrim.  I have no
14 access to theirs."
15        Do you see that?
16   A.   Correct.
17   Q.   So why don't you have access to Shomrim's
18 e-mail address or account -- e-mail list?
19        MR. CARULLO:  Object to the form.
20        THE WITNESS:  That's their private
21 e-mail list.  I have nothing to do with Shomrim.  I
22 don't even e-mail Shomrim.
23 BY MR. FERRONE:
24   Q.   Okay.  Do you have any understanding as
25 to why Mr. Cohen thought that you did?

Page 133

1  Q.  So do you have any understanding as to
2  why you were on these e-mails?
3  A.  No.
4      MR. FERRONE:  Let's move on to tab 20,
5  which will be Exhibit 20.
6      (Exhibit 20 marked for identification.)
7      MR. FERRONE:  And for the record, this
8  is a document that has been reproduced in this case
9  with a Bates number ending in I think it was 137.
10 This is tab 20?  Yes.  It originally had some
11 redactions but it has since been unredacted.
12 BY MR. FERRONE:
13 Q.  So the e-mail we are looking at here,
14 Mr. Berkowitz, is from Mr. Berkowitz to Steve Cohen
15 dated October 17, 2019, at 6:31 p.m., and the
16 subject is "New lawsuit against GHI - Failure to
17 Approve a Procedure (1 Attachment)."
18     Do you see that?
19 A.  Yes.
20 Q.  I'm going to scroll down to the sort of
21 second message in the chain here on the same page
22 dated October 17 at 6:17 p.m.
23 A.  Okay.
24 Q.  Mr. Cohen writes to you, "Alan, Thanks
25 for forwarding this.  We are exploring the

Page 134

1  possibility of on or two class action lawsuits."  I
2  think he meant "one."
3  A.  That's why I'm confused, but okay.
4  Q.  So I think it's "one or two class action
5  lawsuits - in addition to what we are doing on
6  behalf of the individual client - and I will let you
7  know soon."
8      Do you see that?
9  A.  Yes.
10 Q.  Do you have any understanding as to what
11 Mr. Cohen means by "what we are doing on behalf of
12 the individual client"?
13 A.  No.
14 Q.  Why didn't you ask?
15 A.  It wasn't my business to ask about
16 anyone's personal information with an attorney.
17 Q.  Okay.  Well, Mr. Cohen was telling you
18 about it, and you weren't the least bit curious?
19 A.  No.
20 Q.  He also tells you that "We are exploring
21 the possibility of one or two class action
22 lawsuits."
23     Do you see that?
24 A.  Yes.
25 Q.  Did you ever discuss those one or two

Page 135

1  class action lawsuits with him?
2  A.  No.  I don't even know what lawsuits
3  we're talking about here.  He said one, now two.  So
4  I'm honest -- I don't know which one we're
5  discussing, so the answer is no.
6  Q.  So about 14 minutes later, you respond to
7  his e-mail and wrote "Steve, I thought you forgot
8  me," exclamation point.
9      Do you see that?
10 A.  Yes.
11 Q.  What did you mean by that?
12 A.  A joke.  "Thought you forgot me."
13 Q.  What was the joke?
14 A.  Exactly what I said.  "I thought you
15 forgot me."
16 Q.  Why did you think that?
17 A.  Don't remember.
18 Q.  So we've been looking at various e-mails
19 between you and Mr. Cohen dating back to 2017 where
20 you were forwarding on e-mails on his behalf into
21 2019 and 2018 and 2020.
22     How would Mr. Cohen have forgotten you?
23 A.  That's why I said it was a joke.  I don't
24 know.
25 Q.  Did Mr. Cohen respond to you?

Page 136

1  A.  You'd have to look at the e-mails above
2  it.  I don't --
3  Q.  There's nothing in this e-mail chain.
4  Did he separately respond to you that you recall?
5  A.  No.  Not that I recall, no.
6  Q.  Do you recall having any follow-up
7  conversations with him about the one or two class
8  action lawsuits?
9  A.  Not at all.
10 Q.  Okay.  So Mr. Cohen promised to let you
11 know soon but he didn't do that?
12 A.  Correct.
13 Q.  Okay.  And you never followed up to ask
14 what the status was?
15 A.  No.  I'm not involved.  I was not a
16 litigant.  I wasn't honestly concerned about
17 anything.
18     MR. FERRONE:  Okay.  Let's go on to
19 tab 21, please.  This will be marked Exhibit 21.
20     (Exhibit 21 marked for identification.)
21     MR. FERRONE:  It's Bates number
22 PLAVIN_0000005424, and the top e-mail in the chain
23 is from berky4@aol.com to Steve Cohen, and it's
24 dated June 5, 2017.
25 BY MR. FERRONE:

**Page 141**

1  Q.  So Mr. Cohen thanks you for forwarding
2  this on --
3  A.  Right.
4  Q.  -- and that he needs to see the actual
5  EOBs.
6      Do you know what that means?
7  A.  I guess that's the explanation of
8  benefits.
9  Q.  Did you ever collect any explanations of
10 benefits from anyone?
11 A.  No.
12 Q.  Did you ever send Mr. Cohen any
13 explanations of benefits?
14 A.  No.
15 Q.  You respond, as you mentioned when we
16 first put this document on the screen, by saying, "I
17 only forwarded you the e-mail he sent me. I'll copy
18 him on your request."
19     Do you see that?
20 A.  Yes.
21 Q.  Do you know if you did that?
22 A.  No.
23 Q.  No, you don't know or, no, you didn't do
24 it?
25 A.  No, I don't remember if I did it.

**Page 142**

1      MR. FERRONE:  Let's move on to the next
2  document.
3      You know what?  Let's take a short
4  five-minute break.  I think we might be getting to
5  the end.
6      THE WITNESS:  Thank you.
7      THE VIDEOGRAPHER:  The time is 1:18.  We
8  are going off the record.
9      (Brief recess.)
10     THE VIDEOGRAPHER:  The time is 1:25, and
11 we are back on the record.
12     MR. FERRONE:  Thank you.  Will you
13 please put up tab 30 and mark it as Exhibit 22.
14     (Exhibit 22 marked for identification.)
15     MR. FERRONE:  And for the record,
16 Exhibit 22 is a document produced in this case by
17 Mr. Berkowitz with the Bates number 0000000147, and
18 it's an e-mail from Mr. Berkowitz to Steve Cohen
19 dated October 25, 2021, at 9:40 p.m.  And the
20 subject is "Introduction."
21 BY MR. FERRONE:
22 Q.  Do you see the document on your screen,
23 Mr. Berkowitz?
24 A.  Yes.
25 Q.  Mr. Berkowitz, do you recognize this

**Page 143**

1  document?
2  A.  Yes.
3  Q.  What do you recognize about it?
4  A.  I wrote it.
5  Q.  Do you recall why you wrote it?
6  A.  I believe Mr. Cohen was asking me if I
7  was involved in issues with other retirees.
8  Q.  When you say "Mr. Cohen was asking me if
9  I was involved in issues with other retirees," what
10 do you mean?
11 A.  Let me clarify that.  Not issues.  What
12 was my background that I spoke with retirees as
13 president of the Broward 10-13 Club, and this is
14 exactly why.  I was --
15 Q.  For what reason --
16 A.  What?
17 Q.  I'm sorry.  Please finish your answer.  I
18 didn't mean to -- I thought you were finished.
19 A.  No, no, no.  It's just that being
20 president of the club, I'd stand in front of the
21 audience at the time I was president, give them
22 information that pertained to retirees, and I was
23 involved in a lot of ongoing things.  I was a -- you
24 know?  That was it, you know.  I told them who I
25 was.

**Page 144**

1  Q.  So this e-mail is dated September -- I'm
2  sorry -- October of 2021.
3      Do you see that?
4  A.  Yes.
5  Q.  And we looked at e-mails between you and
6  Mr. Cohen dating back to 2015, I think.
7  A.  Yes.
8  Q.  Does that sound right?
9  A.  Yeah.
10 Q.  So in the five or six years, had you
11 never had a discussion with Mr. Cohen about your
12 background?
13 A.  Not that I remember, no.
14 Q.  So you testified a little while ago that
15 Mr. Cohen was "asking me if I was involved in issues
16 with other retirees."
17 A.  Not issues.  I clarified it by saying
18 why -- what did I do, and I said I was president of
19 the club, and I brought topics that were affecting
20 retired, because we had no active in the club,
21 retired -- police retirees, with the City of New
22 York, health benefits, COLA increases, things like
23 that.
24 Q.  Were there retired but
25 non-Medicare-eligible retirees in the club?

Page 145

1  A. No. There was both.
2  Q. There was both. Okay.
3     So for what purpose was Mr. Cohen asking
4  about this in October of 2021?
5  A. You'd have to ask Mr. Cohen.
6  Q. So you spoke with Mr. Cohen on the phone;
7  is that correct?
8  A. I spoke to Mr. Cohen once. I cannot tell
9  you when that was.
10 Q. This e-mail says, "Steve, Thanks for
11 calling me back."
12    So this is at least the second e-mail, if
13 not more, that we've seen references the calls
14 between you and Mr. Cohen; is that right?
15 A. No. I only spoke to Mr. Cohen once. I
16 might have called his office or left a message.
17 This is -- this is the only time I remember speaking
18 to him.
19 Q. Okay. So how did Mr. Cohen convey his
20 request for you to provide information on your
21 background?
22 A. Don't remember.
23 Q. Would it have been by phone?
24 A. I -- I'm going to be honest and tell you
25 I just don't remember.

Page 146

1  Q. So however it was that Mr. Cohen conveyed
2  the request for you to provide this information
3  about yourself --
4  A. Yes.
5  Q. -- when he did that, did he tell you what
6  he needed that information for?
7  A. No.
8  Q. Did you ask?
9  A. No.
10 Q. After you gave him this information, what
11 did Mr. Cohen do with it?
12 A. I have no clue what Mr. Cohen did.
13 Q. So for the prior six years, you had been
14 forwarding on e-mails to your groups at Mr. Cohen's
15 request, correct?
16 A. Correct.
17 Q. And you'd been sending Mr. Cohen proof of
18 the fact that you forwarded these on at his request,
19 correct?
20 A. I have forwarded him one or two to show
21 him that his request was published in somebody's
22 newsletter or so, yes.
23 Q. So did Mr. Cohen ever ask you to talk to
24 the people in the Broward 10-13 Club about the GHI
25 lawsuit?

Page 147

1  A. No.
2  Q. Did Mr. Cohen ask you to talk to the
3  people in the Broward 10-13 Club about anything?
4  A. No.
5  Q. So he just wanted to learn about your
6  background and your ability to talk to members but
7  never asked you to convey any information to them?
8  A. All the information I gave was the
9  information that Mr. Cohen sent via e-mail.
10    MR. FERRONE: Let's move on to tab 31,
11 which is Exhibit 23.
12    (Exhibit 23 marked for identification.)
13    MR. FERRONE: And this is an e-mail, for
14 the record, from Steve Cohen to Alan Berkowitz on
15 October 28, 2021, and it's Bates stamped
16 BERKOWITZ_0000000148.
17 BY MR. FERRONE:
18 Q. Mr. Berkowitz, have you seen this e-mail
19 before?
20 A. Yes.
21 Q. When did you see this e-mail?
22 A. I believe I forwarded this e-mail to
23 Mr. -- Mr. Cohen.
24 Q. Well, I think -- you can take a look at
25 it -- the top e-mail in the chain is from Mr. Cohen

Page 148

1  to you, but there is an e-mail below where it
2  appears on October 27, 2021, that you are writing to
3  Mr. Cohen.
4     Do you see that?
5  A. Yes.
6  Q. And you write to him, "As of 10/27/21
7  4:37 p.m., the Laws database is current through 2021
8  Chapters 1-516 New York City Administrative Code."
9     Do you see that?
10 A. Yes.
11 Q. So, Mr. Berkowitz, what's the context of
12 this e-mail?
13 A. I believe Mr. Cohen was asking me where
14 is it written that the City of New York is required
15 to pay for health coverage for retirees and active
16 members.
17 Q. So why was Mr. Cohen asking you that?
18 A. I can't answer that. I don't know why he
19 asked me.
20 Q. Okay. Let me try it a different way.
21    The last document we looked at was a date
22 where Mr. Cohen -- sorry -- where you provided
23 Mr. Cohen with information on your background was
24 dated on Monday, October 25, 2021.
25    Three days later you're sending him a