# Kagan Decl. Ex. 19

Page 1

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

C.A. NO. 3:17-CV-01462

STEVEN PLAVIN, GARY ALTMAN,
MICHELLE DAVIS-MATLOCK, and
DANIELLE THOMAS, on behalf
of themselves and all others
similarly situated,

    Plaintiffs,

-vs-

GROUP HEALTH INCORPORATED,

    Defendant.
_____/

VIDEOTAPED DEPOSITION OF MICHELLE DAVIS-MATLOCK

Friday, June 17, 2022
9:49 a.m. - 2:50 p.m.

1301 Avenue of the Americas
New York, New York 10019

Stenographically Reported By
Pamela J. Pelino, RPR, FPR, CLR
Notary Public, State of Florida
TSG Reporting
Job #:211804

- - -

Page 2

```
 1                M. DAVIS-MATLOCK
 2   APPEARANCES:
 3   On behalf of the Plaintiffs:
 4       ARI RUBEN, ESQ.
         SUSMAN GODFREY
 5       1301 Avenue of the Americas
         New York, New York 10019
 6
 7
     On behalf of the Defendant:
 8
         JARED KAGAN, ESQ.
 9       JUSTIN FERRONE, ESQ.
         DEBEVOISE & PLIMPTON
10       919 Third Avenue
         New York, New York 10022
11
12
     Videographer:
13
         EDWIN ARLEQUIN
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                M. DAVIS-MATLOCK
 2                    - - -
 3                  I N D E X
 4                    - - -
 5   MICHELLE DAVIS-MATLOCK   DIRECT    CROSS    REDIRECT
 6   BY MR. KAGAN                6
 7
 8
 9
10                    - - -
               E X H I B I T S   M A R K E D
11                    - - -
     DESCRIPTION                                      PAGE
12
     Davis-Matlock Exhibit 1                           27
13     (Plaintiff Michelle Davis-Matlock's Second
        Supplemental Objections and Responses to
14      Defendant's Interrogatories)
15   Davis-Matlock Exhibit 2                           39
       (First Amended Class Action Complaint)
16
     Davis-Matlock Exhibit 3                           43
17     (Plaintiff Michelle Davis-Matlock's Responses
        and Objections to First Set of Requests for
18      Admissions)
19   Davis-Matlock Exhibit 4                           57
       (Text Messages, PLAVIN_5268 - 70
20      CONFIDENTIAL)
21   Davis-Matlock Exhibit 5                           67
       (Email with Attachment, PLAVIN_3827 - 29)
22
     Davis-Matlock Exhibit 6                           69
23     (Text Message through Facebook
        PLAVIN_5240 - 41, CONFIDENTIAL)
24
25              -Continued-
```

Page 4

```
 1                M. DAVIS-MATLOCK
 2                    - - -
              E X H I B I T S   M A R K E D
 3                    - - -
                    (CONTINUED)
 4   DESCRIPTION                                      PAGE
 5   Davis-Matlock Exhibit 7                           74
       (Text Message through Facebook
 6      PLAVIN_5245-53, CONFIDENTIAL)
 7   Davis-Matlock Exhibit 8                           80
       (Facebook Messages, PLAVIN_5257-58
 8      CONFIDENTIAL)
 9   Davis-Matlock Exhibit 9                           85
       (Facebook Messages, PLAVIN_5255, CONFIDENTIAL)
10
     Davis-Matlock Exhibit 10                          92
11     (Facebook Messenger Posts, PLAVIN_5266-67)
12   Davis-Matlock Exhibit 11                          98
       (Text Messages, PLAVIN_5272, CONFIDENTIAL)
13
     Davis-Matlock Exhibit 12                         100
14     (Text Messages, PLAVIN_5273, CONFIDENTIAL)
15   Davis-Matlock Exhibit 13                         103
       (Text Messages, PLAVIN_5277, CONFIDENTIAL)
16
     Davis-Matlock Exhibit 14                         128
17     (October 1, 2020, Letter with Attachments)
        PLAVIN_3477-92, CONFIDENTIAL)
18
     Davis-Matlock Exhibit 15                         133
19     (Emblem Health Summary for Coverage
        Period 7/1/2013 - 6/30/2014, PLAVIN_912-18)
20
     Davis-Matlock Exhibit 16                         113
21     (Emblem Health Plan Payment Summary
        PLAVIN_3455-56, CONFIDENTIAL)
22
     Davis-Matlock Exhibit 17                         137
23     (NYC Office of Labor Relations Employee
        Benefits Program Summary, GHI000130568-618)
24
25
```

Page 5

```
 1                M. DAVIS-MATLOCK
 2              P R O C E E D I N G S
 3                    - - -
 4           Deposition taken before Pamela J. Pelino,
 5   Registered Professional Court Reporter and Notary Public
 6   in and for the State of Florida at Large, in the above
 7   cause.
 8                    - - -
 9           THE VIDEOGRAPHER:  This is the start of
10       media labeled Number 1 of the video-recorded
11       deposition of Michelle Davis-Matlock in the
12       matter Steven Plavin, et al., versus Group
13       Health Incorporated.
14           This deposition is being held at Susman
15       Godfrey LLP, 1301 Avenue of the Americas,
16       New York, New York, on June 17, 2022, at
17       approximately 9:50 a.m.
18           My name is Edwin Arlequin.  I'm the legal
19       video specialist from TSG Reporting,
20       Incorporated, headquartered at 228 East 45th
21       Street, Suite 810, New York, New York 10017.
22           The court reporter is Pamela Pelino in
23       association with TSG Reporting.
24           Counsel, please introduce yourselves.
25           MR. KAGAN:  Good morning.  Jared Kagan of
```

```
                                          Page 86                                           Page 87
 1              M. DAVIS-MATLOCK                      1              M. DAVIS-MATLOCK
 2      Q.    And was it while this lawsuit was ongoing  2   that I might have.
 3   or was it before that?                            3      Q.    Okay.  Do you see where Ms. Mason writes
 4      A.    It was before 2020.                      4   "The Zoom meeting with the attorney working on the
 5      Q.    Okay.  When you spoke with Ms. Mason by  5   GHI class action lawsuit is scheduled for Tuesday,
 6   phone, did you talk about this lawsuit?           6   August 4th, at 6:30 p.m."?
 7      A.    No.                                      7      A.    Yes.
 8      Q.    Okay.  So do you see in Ms. Mason's      8      Q.    Did you attend that Zoom meeting that
 9   message in Exhibit 9, she says, "I have submitted 9   Ms. Mason is referring to?
10   the following questions," and she lists out four 10      A.    I attended a Zoom meeting.  What day it
11   questions?                                       11   was, I could not tell you.
12           And then do you see your message below  12      Q.    Was the Zoom meeting that you're
13   that where you write, "Thank you.  In the process of 13   referring to in August of 2020?
14   moving my daughter.  Will have questions emailed to 14      A.    I couldn't tell you the dates.
15   you on Sunday"?                                  15      Q.    Do you know what year you attended a Zoom
16           Do you see that?                        16   meeting?
17      A.    Yes.                                   17      A.    I couldn't even tell you that.
18      Q.    Did you, in fact, email Ms. Mason      18      Q.    Okay.  The Zoom meeting that you're
19   questions?                                      19   referring to, do you recall who attended?
20      A.    I don't recall -- I don't recall.      20      A.    The Zoom meeting that I --
21      Q.    When you say you don't recall, you mean 21   Michelle Mason, myself, and Steve Cohen.
22   you don't know one way or the other whether you sent 22      Q.    Do you see back in Ms. Mason's Facebook
23   Ms. Mason questions?                            23   post, she writes, "I will post the link as soon as I
24      A.    In regards to this message right here, I 24   receive it"?
25   don't recall sending her any messages or questions 25      A.    I don't see that.

                                          Page 88                                           Page 89
 1              M. DAVIS-MATLOCK                      1              M. DAVIS-MATLOCK
 2      Q.    Do you see that the first sentence in   2      was about a possible lawsuit in which I told
 3   Ms. Mason's message July 29, 2020, she writes "The 3      Steve Cohen that I would contact him at a later
 4   Zoom meeting with the attorney working on the GHI 4      time.
 5   class action lawsuit is scheduled for Tuesday,    5   BY MR. KAGAN:
 6   August 4th, at 6:30 p.m.  I will post the link as 6      Q.    During the Zoom meeting, you told
 7   soon as I receive it"?                            7   Steve Cohen that you would contact him at a later
 8      A.    I see it now.                           8   time?
 9      Q.    Okay.  Do you know if Ms. Mason posted a 9      A.    Yes.
10   link on Facebook regarding this message?        10      Q.    Okay.  What was the purpose of Ms. Mason
11      A.    That, I don't know.  But I know the Zoom 11   being in that Zoom meeting?
12   meeting was through Facebook.                   12           MR. RUBEN:  Objection to form.
13      Q.    Okay.  And do you know if the Zoom     13           THE WITNESS:  She's the person who
14   meeting that Ms. Mason is referring to is the Zoom 14      created the group.
15   meeting that you attended or if they're different 15   BY MR. KAGAN:
16   Zoom meetings?                                  16      Q.    Do you know how Ms. Mason -- well, strike
17      A.    That, I don't know.  I know I attended 17   that.
18   one.                                            18           Do you know if Ms. Mason knows Mr. Cohen?
19      Q.    Okay.  Now, I just want to be careful. 19           MR. RUBEN:  Objection to form.
20   I'm not going to ask you what was discussed.  But 20           THE WITNESS:  I don't know.
21   the meeting that you refer to that you attended with 21   BY MR. KAGAN:
22   Ms. Mason and Mr. Cohen, what was the purpose of 22      Q.    Okay.  So you testified a moment ago that
23   that meeting?                                   23   you told Mr. Cohen that you would contact him by
24           MR. RUBEN:  Objection to form.          24   email after the Zoom meeting.
25           THE WITNESS:  The meeting that I attended 25           Did you, in fact, contact Mr. Cohen by
```

Page 102

M. DAVIS-MATLOCK

1  looks like part of the message is cut off, and it
2  says "view all"?
3      A.  I'm sorry?
4      Q.  In your message to Liza, where it starts
5  with "Hey, Liza" -- do you see that?
6      A.  Yes.
7      Q.  And if you go down that message, do you
8  see part of it's cut off, and it says "view all"?
9      A.  That is correct.
10     Q.  Do you know what the rest of that message
11 says?
12     A.  Not off the top of my head.
13     Q.  Okay.  Do you have that message on your
14 phone still?
15     A.  I can look and see.
16     Q.  Do you have your phone with you today
17 that that was on?
18     A.  Not that particular phone, no, I don't.
19     Q.  Aside from this text message exchange
20 with Liza, did you have any other discussion with
21 her about this lawsuit?
22     A.  No.  She never bothered to answer --
23 well, she told me she no longer had GHI, and that
24 was the end of the conversation.

Page 103

M. DAVIS-MATLOCK

1      Q.  Did anybody ask you to contact former
2  colleagues in relation to this lawsuit?
3      A.  It was mentioned in a Zoom meeting, and
4  for those who may not have attended, that I know
5  personally, I reached out to them to ask them if
6  they were -- if they were having any problems with
7  GHI.
8      Q.  Is that the Zoom meeting with Ms. Mason
9  and Mr. Cohen?
10     A.  Yes.
11         MR. KAGAN:  Mark this as Exhibit 13.
12         (Davis-Matlock Exhibit 13 was marked for
13 identification.)
14 BY MR. KAGAN:
15     Q.  Ms. Davis-Matlock, do you recognize the
16 exhibit that's been marked as Exhibit 13?
17     A.  Yes.
18     Q.  What do you recognize Exhibit 13 as?
19     A.  It was a text message that I sent to a
20 former sergeant of mine.
21     Q.  And that sergeant is Bobby Shirley?
22     A.  That's correct.
23     Q.  Why did you send this text message to
24 Bobby Shirley?

Page 104

M. DAVIS-MATLOCK

1      A.  Because he also lives in Texas and he has
2  GHI, and he has younger kids than I have.  And he
3  wasn't at that Zoom meeting.
4      Q.  Okay.  And did you tell Mr. Shirley, "I
5  have the lawyer's email address and number if you
6  would" -- and then it gets cut off?
7          Do you see that?
8      A.  Yes.
9      Q.  Do you know what the rest of that text
10 message said?
11     A.  No.
12     Q.  Do you recall why you told Mr. Shirley
13 that you have the lawyer's email address and number?
14     A.  Once again, he lives in Texas, he has
15 GHI, and we have a problem finding doctors that will
16 take GHI.  So as part of that group, we all talk
17 about various things.
18         And I do know he wasn't present at that
19 meeting, so I told him if he did have any problems I
20 had the lawyer's email address.  I didn't just
21 voluntarily give out Steve Cohen's information.  If
22 someone -- which no one did -- except for Liza told
23 me she didn't have GHI.  Bobby Shirley never
24 responded back to me, so I left it at that.

Page 105

M. DAVIS-MATLOCK

1      Q.  So at the time that you sent Mr. Shirley
2  this text message in August of 2020, had you decided
3  at this point one way or another whether you were
4  going to be a plaintiff in this lawsuit?
5      A.  I don't recall.  I do know that I went to
6  the Zoom meeting, but I don't recall if it was like
7  right then and there.
8      Q.  So having looked at some of these text
9  messages relating to the Zoom meeting that you've
10 referenced, do these refresh your recollection at
11 all about anything else that was discussed in the
12 Zoom meeting?
13         MR. RUBEN:  Objection to form.
14         THE WITNESS:  Only thing I can recall
15     right now is the lack of doctors that
16     participate within GHI and the fact that some
17     of us have to travel back here to New York.
18 BY MR. KAGAN:
19     Q.  And in the Zoom meeting with Ms. Mason
20 and Mr. Cohen, do you recall being told anything
21 about this lawsuit?
22     A.  What do you mean?
23     Q.  Do you recall anybody in that meeting
24 discussing anything about the specific claims in

Page 106

M. DAVIS-MATLOCK

this lawsuit?

    MR. RUBEN: And just to caution you, to the extent this is asking about a private meeting you had with Mr. Cohen, I would advise you not to answer on grounds of attorney-client privilege.

    I'm not totally clear which meeting you're talking about.

    MR. KAGAN: I can ask that again.

BY MR. KAGAN:

Q. In the Zoom meeting with Mr. Cohen and Ms. Mason, do you recall anybody in that meeting discussing anything about the specific claims in this lawsuit?

    MR. RUBEN: Same instruction.

    THE WITNESS: No, I don't recall.

BY MR. KAGAN:

Q. Just to be clear, do you not recall or are you not disclosing any information because you're following your lawyer's instruction?

    MR. RUBEN: And to be clear, the instruction is if it was something that happened on a Zoom call that was made available beyond just you and Mr. Cohen, but to other

Page 107

M. DAVIS-MATLOCK

folks where confidential communications weren't had, I'm not instructing you not to answer that. I'm just instructing you not to answer if you had a private communication with Mr. Cohen.

    THE WITNESS: During that Zoom meeting, as I stated before, I'm not exactly sure who was in attendance. I do know -- because I know Bobby Shirley and Liza personally, I do know that they were not in attendance at the Zoom meeting.

    Everyone else who is part of this group, I don't know them, so I couldn't tell you X was there or Y was there. I just know of who I know on a personal note of who was there.

    What was discussed, I don't know.

BY MR. KAGAN:

Q. So I'm not sure I'm following, so I just want to make sure we're clear.

    So earlier today you had testified about a Zoom meeting that you attended with Mr. Cohen and Ms. Mason; correct?

A. That is correct.

Q. And they were on the same Zoom meeting;

Page 108

M. DAVIS-MATLOCK

right?

A. It was -- yes. We all were on the Zoom meeting.

    There were others, but I do not know who they were.

Q. Right. That's what I'm trying to understand. So in addition to you and Mr. Cohen and Ms. Mason, there were other individuals on that Zoom meeting?

A. Oh, that's correct. It wasn't a three-way conversation with just the three of us.

Q. Okay.

A. There were others. I just don't know who they were.

Q. Okay. Thank you.

    Do you know approximately how many other individuals were on that Zoom meeting?

A. No.

Q. Okay. Who spoke at that Zoom meeting?

A. Steve Cohen and Michelle Mason and maybe others. The others, I could not tell you.

Q. Okay. Do you recall anything specific that Ms. Mason said on that Zoom meeting?

A. No.

Page 109

M. DAVIS-MATLOCK

Q. Do you recall anything specific that Mr. Cohen said on that Zoom meeting?

A. No.

Q. On that Zoom meeting that we've been discussing, did anybody say on that meeting that you should reach out to other individuals who you know have GHI but could not attend this meeting?

A. That, I do recall.

Q. Okay. Who said that?

A. That, I don't know, but I do know that that's why I reached out to Liza, I reached out to Bobby Shirley, and I reached out to Walter Sherrod.

Q. Can you go back to Exhibit 9, please.

A. (Witness complies.)

Q. And looking at Ms. Mason's message, do you see there's a list of questions where she writes "I have submitted the following questions"?

A. Yes.

    MR. RUBEN: I'm sorry, Counsel. My exhibits aren't marked. Which date is the Exhibit 9?

    MR. KAGAN: It's ending in Bates Number 5255.

    MR. RUBEN: Okay. Thank you.